PHILIP HENRICI CO. v. REINECKE, Internal Revenue Collector.

(District Court, N. D. Illinois, E. D. December 19, 1924.)

No. 34966.

Internal revenue ⊃7—Depreciation in value of leasehold through lessening of term held proper deduction.

Under Revenue Act 1918, § 234 (a), being Comp. St. Ann. Supp. 1919, § 6336⅛pp, providing for deduction, in computing net income of corporation subject to income tax imposed by section 230 (Comp. St. Ann. Supp. 1919; § 6336⅛nn) of "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence," depreciation in value of leasehold as of March 1, 1913, date prescribed for fixing value of property theretofore acquired, through lessening of term, held proper deduction.

At Law. Action by the Philip Henrici Company against Mabel G. Reinecke, Collector of Internal Revenue for the First District of Illinois. On demurrer to declaration. Overruled.

Winston, Strawn & Shaw, of Chicago, Ill. (Silas H. Strawn, James H. Winston, and Richard Hollen, all of Chicago, Ill., of counsel), for plaintiff.

Edwin A. Olson, U. S. Atty., of Chicago, Ill., and Nelson T. Hartson, Sol. of Internal Revenue, and Edward C. Lake, both of Washington, D. C., for defendant.

ALSCHULER, Circuit Judge. The issue is on demurrer to the declaration, which alleges that plaintiff was and is occupying in and for carrying on its business the premises in Chicago demised to it by lease of December 1, 1902, to expire April 30, 1928, at a rental of $24,000 per annum to April 30, 1921, and $26,000 per annum to expiration; that on March 1, 1913, the lease had a fair market value of not less than $370,000; that for each of the taxable years 1918, 1919, and 1920 plaintiff claimed in its return for federal income tax, and was allowed, deduction for depreciation of such leasehold value of $25,276.48, and that upon an audit of plaintiff's returns for those years by the Treasury Department, made in August, 1922, the said deductions were again found proper and approved; that afterwards, on October 22, 1923, upon re-audit by the Treasury Department of plaintiff's income tax return for the said years, the said deductions for depreciation of the leasehold estate, theretofore granted and approved by the Treasury Department, were disallowed, and in consequence thereof an additional income tax against plaintiff for the said years in the aggregate of $36,017.87, being the amount resulting wholly from the disallowance for depreciation in value of said leasehold, was assessed against plaintiff, and by it under protest paid to defendant as collector of internal revenue; that such refusal of the Treasury Department to permit such deduction for depreciation from plaintiff's gross income for said years was wrongful and in violation of the Constitution and laws of the United States; and that plaintiff has made due demand for refund of same, this action being brought for its recovery. Defendant's demurrer challenges plaintiff's asserted right to deduct from gross income reduced value of the leasehold estate through the lessening of its term.

Section 234 (a) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛pp) provides that "in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * * (7) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence." If hereunder the claimed deduction may not be made, there is no statutory warrant for it. That the question is not without doubt is apparent from the varying attitudes thereon of the

Treasury Department itself. As stated in the declaration, prior to August 23, 1922, the Treasury Department had promulgated its ruling, known as Office Decision 720, as follows:

"In the case of a lease held by the original lessee, who acquired it prior to March 1, 1913, without any payment other than a stipulated annual rent, the presumption is that the lease had no value as at March 1, 1913. Under this presumption there is no basis for a depreciation deduction. This presumption can be overcome only by evidence showing conclusively that the lease had a value as of March 1, 1913, for depreciation purposes. There is no prescribed method by which the value of a lease as of March 1, 1913, in excess of its presumptive value as at that date may be established. The burden is upon the taxpayer to establish the basis for depreciation to the satisfaction of the Bureau."

Also the following regulations:

"Reg. 45, art. 163. *Depreciation of Intangible Property*. Intangibles, the use of which in the trade or business is definitely limited in duration, may be the subject of a depreciation allowance. Examples are patents and copyrights, licenses, and franchises. Intangibles, the use of which in the business or trade is not so limited, will not usually be a proper subject of such an allowance. If, however, an intangible asset acquired through capital outlay is known from experience to be of value in the business for only a limited period, the length of which can be estimated from experience with reasonable certainty, such intangible asset may be the subject of a depreciation allowance, provided the facts are fully shown in the return or prior thereto to the satisfaction of the Commissioner."

"Reg. 45, art. 164. *Capital Sum Recoverable Through Depreciation Allowances*. The capital sum to be replaced by depreciation allowances is the cost of the property in respect of which the allowance is made, except that in the case of property acquired by the taxpayer prior to March 1, 1913, the capital sum to be replaced is the fair market value of the property as of that date. In the absence of proof to the contrary, it will be assumed that such value as of March 1, 1913, is the cost of the property less depreciation up to that date."

On October 15, 1922, it promulgated its Treasury Decision 3414, which is:

"A lessee is not entitled, under the Revenue Acts of 1916, 1917, 1918, or 1921, to an allowance for depreciation based on the value of his lease as of March 1, 1913, if acquired prior thereto, but where a leasehold is acquired for business purposes for a specific sum, the purchaser may take as a deduction in his return an aliquot part of such sum each year, based on the number of years the lease has to run."

It does not appear that the question as to leaseholds has been adjudicated in the federal courts. Deductions claimed for depreciation of mining property through the removal of minerals has been passed on a number of times under the Corporation Tax Law of 1909, which permitted deduction of "all losses actually sustained within the year * * * including a reasonable allowance for depreciation of property." In Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460, the court said:

"We do not think Congress intended to cover the necessary depreciation of a mine by exhaustion of the ores in determining the income to be assessed under the statute by including such exhaustion within the allowance made for depreciation."

Under substantially like circumstances this was also held in Goldfield Consol. Mines Co. v. Scott, 247 U. S. 126, 38 S. Ct. 465, 62 L. Ed. 1022, and United States v. Biwabik Mining Co., 247 U. S. 116, 38 S. Ct. 462, 62 L. Ed. 1017. These cases, as well as some others, all applicable to mines, would be more influential in sustaining defendant's contention, were it not for what was said by the court in Doyle, Collector, v. Mitchell Brothers Co., 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054, in which it was held that the stumpage value of timber removed and sold from lands owned by the taxpayer was deductible as depreciation under the same statute. The court said:

"There is only a superficial analogy between this case and the case of an allowance claimed for depreciation of a mining property through the removal of minerals, since we have held that owing to the peculiar nature of mining property its partial exhaustion attributable to the removal of ores cannot be regarded as depreciation within the meaning of the act"—citing the cases above referred to.

It is to be noted that the Income Tax Law of 1918 and those thereafter passed do not employ the term "depreciation" as in the Corporation Tax Law,[1] but instead the words "a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence"; also that specific

[1] 36 Stat. 112.

provision was in them made for deduction for depletion of mining property through the removal of minerals therefrom.

The question remains whether within the deductions so stated would fall a lease whose definite market value on March 1, 1913, necessarily and ratably abates as the term of its expiration approaches. I do not understand the words of the Income Tax Law in this regard to be less comprehensive than those of the Corporation Tax Act; indeed, quite the contrary. In deciding the mining cases the court concluded that the depletion of the mining property through removal of minerals did not fairly fall within the designation of "depreciation." Had the word "exhaustion" been present, I think it quite likely that the mining cases might have been otherwise decided. The subsequent specific inclusion in the statute of mining property, as a subject for deduction was no doubt occasioned through the prior decisions of the Supreme Court referred to, but to my mind the term "exhaustion" would have warranted it. The removal of mineral from the lands "exhausted" them to the extent of the value of the minerals while a part of the lands. While the court held the removal of the timber would warrant deduction as "depreciation," I think under the Income Tax Law it would also fall under the designation of "exhaustion." It would hardly be "wear and tear," and would surely not be classified as "obsolescence."

In the same sense a lease, which had a definite market value on March 1, 1913, the date prescribed in the Income Tax Law for fixing value of property theretofore acquired, is not less a proper subject for deduction for exhaustion occasioned wholly by the flight of time. It is "property"; intangible, it is true, but property none the less. The lease was not of such duration, and its conditions were not such as to make the lessees its practical owners, but absolutely expiring within a comparatively brief period of time. Plaintiff's capital or property value was and is necessarily exhausted from year to year, until at the end of the term it will inevitably wholly disappear. That the leasehold was used in the trade or business is very evident.

If plaintiff had owned the property, it would still have it from year to year, and there would be no exhaustion. If on March 1, 1913, plaintiff had paid the conceded then market value of $370,000 for this lease, the specific provisions of Treasury Decision 3414 would permit him to charge this as additional rent, allocated proportionately for the term of the lease. If in some other manner plaintiff had at that time secured the right to use the premises rent free for the same term, the right would have been worth very much more, and this value would be a capital asset of plaintiff. Its gross income would not be reducible by rent, because it paid none; but should it not be reduced by the annual exhaustion or disappearance of the capital value of the leasehold through the maturing of the right of free occupancy?

Just as surely as time passes, the admitted $370,000 market value of this lease on March 1, 1913, will be wholly exhausted on April 30, 1928; and unless plaintiff shall have had the right of deduction from year to year of this, its capital so exhausted in the business, it will not only have consumed in its business this capital sum, but will have been obliged to pay an income tax upon it—a result which I believe the law did not intend and does not require.

Upon the proposition here involved it seems to me that Treasury Decision 720, under which these deductions were made, audited, and approved by the department, is more in consonance with the spirit of the statute and with fairness to the taxpayer than the later rule announced in Decision 3414.

The demurrer is overruled.