Appeal of **NEWAM THEATRE CORPORATION.**                    Docket No. 797.

Under the evidence in this appeal the taxpayer is not entitled to classification as a personal service corporation.

Submitted March 2, 1925; decided March 25, 1925.

*Joseph P. Bickerton, Jr., Esq.,* for the taxpayer.
*J. Arthur Adams, Esq.,* for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This appeal involves the determination of the question whether during the taxable period, September 15, 1919, to June 30, 1920, the taxpayer was a personal service corporation within the meaning of section 200 of the Revenue Act of 1918.

FINDINGS OF FACT.

1. The taxpayer is a New York corporation, incorporated in the year 1919, having its principal place of business in New York City. Its capital stock is $10,000, which is held by A. L. Erlanger, Charles B. Dillingham, and Florenz Ziegfeld, each of whom holds 33⅓ per cent of such stock.

2. The business engaged in by the taxpayer is the operation of the New Amsterdam Theatre in New York City. The corporation owns no property, with the exception of the lease on the theatre mentioned. The New Amsterdam Theatre building is owned by Klaw & Erlanger Construction Co., a corporation, and in its entirety consists of office building, roof garden, and theatre. On August 19, 1919, Klaw & Erlanger Construction Co. leased this building to Erlanger, Dillingham, and Ziegfeld, who assigned this lease to the Two Hundred and Fourteen West 42nd Street Co., Inc. The last-mentioned corporation, on September 9, 1919, leased the theatre portion of these premises to the Newam Theatre Corporation, the taxpayer, for a term of years commencing September 15, 1919, and terminating June 30, 1924, at an annual rental of $130,000, payable in equal monthly installments of $10,833.33 on the 15th day of every month.

3. The taxpayer corporation produced no plays. Its function was solely that of operating the New Amsterdam Theatre. Such operation consisted of presenting to the public certain plays selected by its three stockholders above mentioned. These plays having been selected by these stockholders, the taxpayer entered into contracts with the producers thereof under the terms of which the producers

staged the plays in the theatre provided by the taxpayer. Under these contracts the box-office receipts were divided between the producers and the taxpayer on an agreed percentage to each. The taxpayer pays no salaries to actors nor royalties or other remuneration to authors. It does not furnish or pay for costumes, scenery, or other equipment required in the *production* of the play. The expenses of the corporation are confined to rental of the New Amsterdam Theatre under the terms of its lease thereon, care and upkeep of the theatre, and sale of tickets to the public. The only employees of the taxpayer are a theatre manager, box-office attachés, ushers, stage hands, and cleaners. On occasions when the nature of the theatrical production on the boards requires it an orchestra is employed at the expense of the taxpayer.

4. The sole stockholders of the taxpayer were Erlanger, Dillingham, and Ziegfeld. These men have been employed in the theatrical business for 40, 30, and 35 years, respectively. All are expert in the art of acting, stage directing, and construction of plays. By reason of their talent and years of experience in their line, they possess a high degree of acumen and judgment as to the public taste for theatricals. They possess in a high degree a discernment of the qualities of a play which will make a successful appeal to the public. They are expert in selecting popular theatrical successes. They exercised this skill and talent as stockholders of the taxpayer in selecting plays for presentation by the taxpayer. Each of them was active in viewing and appraising plays with a view to selection for presentation by the taxpayer. In order that a play might be presented by the taxpayer it was necessary to have the unanimous approval of these three men. When a play had been so selected by them, they gave their time and effort to improving it by suggestions to the producer of such play, with a view to making it suitable for presentation at the New Amsterdam Theatre. Such services were performed without pay from the producer and were for the benefit of the taxpayer. Each of the taxpayer's stockholders was regularly engaged in the active conduct of the corporation's affairs.

5. The taxpayer had no source of income other than moneys received from its patrons—the public—except for a comparatively small revenue from concessions inside the theatre.

6. The taxpayer filed a return of its income for the period September 15, 1919, to June 30, 1920, on form 1065, as a personal service corporation. On audit the Commissioner disallowed the taxpayer classification as a personal service corporation and computed the tax as upon a capitalistic corporation, and notified the taxpayer of a deficiency in tax by registered letter dated September 25, 1924. The taxpayer appealed therefrom and filed its petition on November 24, 1924. It appears from the record there is no dispute between the parties as to any question other than whether the taxpayer is or is not a personal service corporation, within the meaning of section 200 of the Revenue Act of 1918.

#### DECISION.

The determination of the Commissioner is approved.

OPINION.

KORNER: In the *Appeal of Bryant & Stratton Commercial School, Inc.,* 1 B. T. A. 32, this Board said:

The statutory definition of a personal service corporation contains three elements, all of which must be present. First, the income must be ascribed primarily to the activities of the principal stockholder[s]; second, such principal owners or stockholders must be regularly engaged in the active conduct of the corporation's affairs; and, third, the income of the corporation may not be materially produced by capital. It will be noted that each of these three elements is so qualified as to require careful individual judgment in every case. The first element requires not that the income must be ascribable entirely to the activities of the stockholders, but only that it shall be *primarily* so. In the second element the stockholders are not merely to be somewhat engaged in the corporation's affairs, but they must be *regularly* and *actively* engaged in such affairs. And in the third element, if any capital is employed in the business, it may not be a *material* income-producing factor. These qualifying words, *primarily*, *regularly*, and *actively*, and *material*, preclude any definitive classification. They make necessary the application of a flexible judgment, and since we are required by the statute to decide the question, it is our judgment which must be applied to the facts of each case which comes before us. No intensive rule can be laid down * * *. The very statement of a rule, if rigidly adhered to, would defeat the letter and intendment of the Act.

In the light of the above, let us examine the facts in the instant appeal. The record leaves no doubt of the fact that all of the stockholders of the taxpayer were regularly and actively employed in the active conduct of the affairs of the corporation. Every play presented by the taxpayer was selected upon the joint and several judgment of Erlanger, Dillingham, and Ziegfeld.

It being established that all the stockholders of taxpayer were regularly and actively engaged in the conduct of the affairs of the corporation, the remaining elements for consideration are whether the income of the corporation must be ascribed primarily to such activities of these stockholders, and whether capital was an income-producing factor.

The income of this taxpayer was primarily derived from the *presentation* of plays selected by its three stockholders but produced by others. From the standpoint of this taxpayer the successful presentation of these plays presented two prime requisites. The first requisite was a careful selection of the play to be presented and a contract with its producer for its presentation; the second requisite was a suitable place for its presentation. Under the circumstances presented here, each was a very necessary prerequisite. The play, no matter how careful its selection, could not prove an income-producing success without a commodious place for its presentation. The taxpayer corporation engaged to do two things—to select and procure the plays and to furnish its patrons a place in which to view them. Without the presence of both these requisites the income of the corporation could not have been a success from an income-producing standpoint.

The first of these elements of success has been discussed and was undoubtedly due to the personal efforts, activities, and services of the entire group of stockholders. But the latter element was a material income-producing factor as well, and that element constituted capital. The corporation was enabled to provide the place (the theatre), which, as we have observed, was a material factor in producing its

income, by its possession of a leasehold of the theatre premises. Such a leasehold was a capital asset of the corporation and entered into its capital account. This leasehold was especially valuable to the corporation because it made possible the presentation of the plays selected by its stockholders and in that very material manner helped to produce the income of the corporation. The business in which the corporation was engaged makes this reasoning particularly applicable and constitutes a cogent factor in our determination. There are businesses which are so conducted that the places in which they are conducted do not matter much or contribute materially to the income, but a theatre for the presentation of plays to large bodies of the discriminating public does not come within such class. The theatre which taxpayer held under leasehold was capital to the corporation and was a material income-producing factor.

The Board is of the opinion that the instant appeal is distinguishable from the decision in *Bryant & Stratton Commercial School Appeal, supra,* on this point, because of the different state of facts presented. In the instant appeal the function of the corporation was not to render personal service to the persons from whom it derived its income, but its function was to make its lease productive of income. In the *Bryant & Stratton Commercial School Appeal* the reverse was true. There the lease was an incident to the performance of personal service for the students of the school, i. e., giving instruction to these students. Teaching was the function and the lease was a necessary incident. In the instant appeal the function of the corporation was the operating of a theatre and its business was to operate it successfully. The personal services which were rendered by its stockholders were in behalf of the corporation to assure profit from the lease by such successful operation. There were no personal services to patrons or customers. The personal services were by the stockholders for the corporation.

It is the opinion of the Board that the taxpayer is not entitled to classification as a personal service corporation, and the determination of the Commissioner is approved.