### COTTON HOTEL CO. v. BASS, Collector of Internal Revenue.

(District Court, W. D. Texas. Austin Division. July 6, 1925.)

No. 1074.

Internal revenue ⊗⇒7—Company operating hotel as lessee held not "personal service corporation," relative to income tax; "capital."

Corporation operating new hotel worth $500,000, owning 10-year lease thereof and $33,000 worth of furniture therein, *held* not a "personal service corporation," defined by Revenue Acts 1918, 1921, § 200 (Comp. St. Ann. Supp. 1919, Comp. St. Ann. Supp. 1923, § 6336⅛a), the stockholders of which, instead of it, are under Revenue Act 1918, § 218(e), being Comp. St. Ann. Supp. 1919, § 6336⅛i, and Revenue Act 1921, § 218(d), being Comp. St. Ann. Supp. 1923, § 6336⅛i, subject to income tax; the lease being "capital" and a material income-producing factor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital; Personal Service.]

At Law. Action by the Cotton Hotel Company against James W. Bass, Collector of Internal Revenue. Judgment for defendant.

McDonald & Wayman, of Galveston, Tex., for plaintiff.

John D. Hartman, U. S. Dist. Atty., of San Antonio, Tex., and Floyd Toomey, Sp. Atty. Int. Rev., of Washington, D. C., for the United States.

WEST, District Judge. The defendant, collector of internal revenue, is sued for the recovery of certain moneys paid by plaintiff company as income and profits taxes, which it claims were erroneously and illegally assessed against it for the years 1920 and 1921. The action results from a disallowance of plaintiff's claim for exemption under sections 218 and 231 (14) as a personal service corporation, as defined in section 200 of

the Revenue Acts of 1918 and 1921 (Comp. St. Ann. Supp. 1919, Comp. St. Ann. Supp. 1923, §§ 6336⅛a, 6336⅛i, 6336⅛o).

The plaintiff, Cotton Hotel Company, was organized for the purpose of operating an 11-story hotel in a building then being constructed in Houston, Tex., owned by Almon Cotton, and known as the Cotton Hotel. The owner, by formal instrument in writing dated December 30, 1912, leased the hotel building, then nearing completion, and premises, to James E. Daley and Robert H. Moffatt upon the following terms: The lessees "to have and to hold" the hotel building and premises "for and during the term of ten years from February 1, 1913, until February 1, 1923." The lessees are obligated to operate the hotel under their own supervision and management, and to pay lessor 65 per cent. of the net receipts; the lessees to receive the remaining 35 per cent.; settlements to be made monthly. The lessees are required to "furnish and install at their own expense all furniture, carpets, and other equipment requisite for the furnishing and operating of said hotel, the price of which, including installing, shall not exceed $50,000, nor to be less than $30,000; same to be the individual property of the lessees." The right is given to lessees to assign the lease to a corporation to be organized by them for the purpose of conducting and operating the hotel, but the lease provides that Daley or Moffatt, one or both, shall at all times be the manager, and give his or their personal attention to the conduct and management of the hotel; provides that H. Hamilton may manage the company, but before any one other than Daley or Moffatt shall be employed to manage the hotel the hotel company must furnish bond as a guaranty against loss; in the event of Hamilton's death the hotel to be managed by experienced persons elected by the directors of the company. The salary of managers, or manager, to be paid out of hotel company's share of the net profits, not out of gross profits. Before lessees can sell any shares of stock in operating company, lessor has the first right or refusal to purchase at same terms.

Thereafter the plaintiff company was incorporated and capital stock in $100 shares, issued to the amount of $15,000 to the following stockholders:

| | | |
|---|---|---|
| J. E. Daley | 50 | shares |
| R. H. Moffatt | 50 | shares |
| H. Hamilton | 39 | shares |
| B. J. Machin | 5 | shares |
| Jesse Andrews | 2½ | shares |
| R. H. Neilson | 2½ | shares |
| L. A. Gravenberg | 1 | share |

On March 1, 1913, the lease was assigned to the plaintiff company. The hotel building was at that time conceded to be worth $500,-000, and greatly increasing in value thereafter. The lessees were required to expend in furniture and equipment not less than $30,000, and presumably this was done. It is conceded that approximately $33,000 was so expended by lessees.

Title II, Income Tax, of the Revenue Acts of 1918 and 1921, provides in part as follows:

"Sec. 200. That when used in this title * * * the term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor. * * *"

Section 218 (e) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛i) and section 218 (d) of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6336⅛i) provides as follows:

"Personal service corporations shall not be subject to taxation under this title, but the individual stockholders thereof shall be taxed in the same manner as the members of partnerships. All the provisions of this title relating to partnerships and the members thereof shall so far as practicable apply to personal service corporations and the stockholders thereof. * * *"

Was the plaintiff, during 1920 and 1921, a personal service corporation within the meaning of the law? The definition of "personal service corporation" resolves itself into three essentials. If the corporation lacks either of the three it is not within that classification. These three essentials are: (1) The income, must be ascribed primarily to the activities of the principal owners or stockholders; (2) who are themselves regularly engaged in the motive conduct of the affairs of the corporation; (3) and in which capital is not a material income-producing factor.

What was the producing causes of the income in the enterprise set on foot by the terms of the lease of the Cotton Hotel to Daley and Moffatt, and their assignee—the plaintiff, Cotton Hotel Company? The undisputed facts show that the gross income was derived from operating the hotel, though there was some income coming from the rentals of basement, and cigar and news stand concessions. To produce net returns implies

a hotel to be operated under efficient management. Almon Cotton, lessor, party of the first part, produced the hotel building and leased it to the assignors of the operating company for the term of ten years. The company, through its principal stockholders, produced the expert management. The written agreement between Cotton and Daley and Moffatt was something more than a lease, in that it presented definitely the terms under which the joint venture was undertaken and names the considerations moving each party. All the elements of a conveyance of a leasehold interest in real property for a term of years formally granting the right of use, control, occupancy, and possession, for a specified purpose, are present. The evidence shows that the terms of this lease-operating contract were in substance performed throughout the entire term, embracing the questioned incomes of 1920 and 1921.

Plaintiffs contend that the written contract fixing the terms of the business enterprise is not alone a lease, but that its terms indicate the legal relationship of partnership and not that of landlord and tenant—a joint contribution of property by partner Cotton, by which he gives the use of his hotel for ten years and Daley and Moffatt, and others, contribute their personal services as expert hotel managers, materialized in corporate form. The net incomes derived from the joint venture to be divided between the hotel owner (65 per cent.) and the operating company (35 per cent.), and a joint sharing of profits or losses; thus making it appear that the operating company was only engaging the personal services of its stockholders and not employing capital, except in the minor degree of providing the furnishings of the hotel during the term of operations, amounting to about $33,000.

Whether the relation between the original parties to the joint undertaking bound them as partners, or whether the incorporation by the second parties of their "rights, titles and interest" in the joint business venture served to create a "personal service corporation," without affecting their status as partners, are questions not necessary to decide. The partnership relation is not claimed to exist, except as to individuals concerned, and not as to plaintiff as a corporation. The plaintiff is admittedly incorporated; presumably its charter powers confer the right to carry on the business of managing hotels, or at least the hotel in question.

The sole issue tendered by plaintiff's petition is the one of classification, and its denial of the right to be so classified by the defendant collector; likewise by the Commissioner of Internal Revenue, and by the committee of the Board of Tax Appeals, finally presenting the same issue to this court. The claim of partnership is not based on any affirmative assertion of right in plaintiff's petition, but only in the argument of counsel. A formal finding of the existence of such a status would be obiter dictum, and inconsistent with plaintiff's single plea to be classified as a "personal service corporation." How can a corporation as such form a component unit of a partnership? If a partnership exists, as argued, the law must necessarily disregard the corporate entity and look to the individuals, the stock owners, and Almon Cotton as the partners. This would not affect the status of the corporation. The issues would still be: "Is the plaintiff company a 'personal service corporation'? and are the incomes of 1920 and 1921 to be ascribed primarily to the activities of the principal owners stockholders? or was capital a material income-producing factor?"

The word "capital" embraces all property used in business, including money; a "lease" of a building for a term of years, as in this case, is property, and is "capital," as used in the statute. It is a valuable property right. Caledonia Coal Co. (D. C.) 254 F. 742; Turner v. Cattlemen's Trust Co. (Tex. Com. App.) 215 S. W. 831; Philip Henrici Co. v. Reinecke, Collector (D. C.) 3 F.(2d) 34. The evidence shows that the plaintiff owned and employed in the business of operating the hotel the following capital or property: (1) The lease of the hotel building; and (2) the furniture and hotel equipment, representing an outlay of about $33,000. The use of a hotel property, newly constructed, in a large city, having a value of $500,000, and constantly increasing in value, is a valuable property right, material and necessary to the company in operating the hotel under the lease contract. The company was required to, and did, expend in furnishings and equipment about $33,000. In carrying out the terms of the lease contract, the performance of these mutual obligations was necessary to its very existence. Can it be said that the right to occupy, manage, and use the hotel for ten years was not a material income-producing factor, or that the expenditure of $33,000 in furniture and equipment is so inconsiderable that it should not be taken into account? The corporation could not function without a hotel to manage, nor could it under the contract proceed without first expending not less than $30,000 for furniture and equipment. That these

two vital assets of capital were each material income-producing factors is so obvious that the questions carry their own answer.

Counsel ably argued their propositions and filed well-prepared briefs. The great weight of authority is with the defendant in this case. Particularly instructive and decisive have been the opinions of the United States Board of Tax Appeals, especially the one appearing in volume 1, March 31, 1925, No. 16, p. 887, U. S. Board of Tax Appeal Reports, opinion rendered by members Ivins, Korner, and Marquette, in the appeal of the Newam Theatre Corporation, in which that corporation was denied classification as a personal service corporation. The material facts in that case are nearly identical with those at bar. The opinion is a convincing application of the facts to the essential requirements of the statute in defining and fixing the status of personal service corporations, and enables this court with confidence to determine the issues presented.

Referring to plaintiff's income for the years 1920 and 1921, the court holds that the corporation employed capital which was a material income-producing factor; that the income of plaintiff corporation is ascribed primarily to the capital invested, and not to the activities of the principal owners or stockholders; that the evidence fails to establish that the principal owners or stockholders were actively engaged in the active conduct of the affairs of the corporation; and that the plaintiff, Cotton Hotel Company, Incorporated, was not a "personal service corporation" within the meaning of the law, and not entitled to, and is denied, any right of recovery from defendant of $7,761.98 income and profits taxes claimed to have been collected for the said years 1920 and 1921. A formal final order and judgment carrying this into effect will be entered in due course in open court at the Austin Division.