COMMERCIAL REFERENCE CO., PETITIONER, v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 9420.   Promulgated June 17, 1927.

Personal service classification denied upon the grounds that the
earnings are not to be ascribed primarily to the activities of the
principal stockholders and that capital was a material income-
producing factor.

*Albert E. James, Esq.*, for the petitioner.
*J. Arthur Adams, Esq.*, for the respondent.

The Commissioner determined a deficiency in income and profits
tax for the calendar years 1920 and 1921 in the respective amounts
of $2,920.86 and $2,742.79, as a result of his refusal to classify the
petitioner as a personal service corporation. He determined an
overassessment of $36.59 for 1922.

### FINDINGS OF FACT.

The petitioner is a Pennsylvania corporation with its principal
place of business in Philadelphia. It was organized in 1909 by
consolidating the Pennsylvania Credit Co., Ltd., and the Consumers
Mercantile Agency, Inc., both credit agencies, and thereafter carried
on the business on the same basis.

The petitioner issued capital stock of a par value of $30,000,
$3,000 of which was issued for cash, and $27,000 for the plant, good
will, files and records of the two companies mentioned.

The organizers of petitioner were Robert O. Cowan, J. S. Free-
man, Allen C. Middleton and Robert R. Dornan. Middleton had
been the attorney and owner of the Consumers Mercantile Agency,
Inc., and Dornan the manager thereof. Freeman was an attorney
and was associated with Cowan in the Pennsylvania Credit Co.

After the consolidation, Cowan became the president and Dornan
the secretary and treasurer of petitioner. Upon Dornan's death in
1917, Sarah W. Cowan, sister of Robert O. Cowan, became secretary
and treasurer and there was no change in such officers during 1920
and 1921.

During the taxable years 1920 and 1921, the petitioner was engaged
in the business of supplying credit information to its customers or
subscribers and annually published a rating book known as the
" Red Book," which was furnished to subscribers under lease of con-
tract. Petitioner's customers consisted mainly of those engaged in
the retail mercantile business in Philadelphia. Upon special requests
therefor, petitioner furnished specific credit information in greater
detail than given in the " Red Book " and received compensation for
same, on the basis of $1 for each credit statement so furnished. Peti-

tioner obtained information through its employees known as investigators and reporters. From 300 to 400 such information reports were daily prepared. Employees engaged as investigators or reporters were not stockholders of petitioner, nor was any stockholder engaged in serving as an investigator or reporter. The information procured by reporters was also utilized in keeping petitioner's "Red Book" up to date. During each of the years 1920 and 1921, petitioner served approximately 500 customers, either by renting them a "Red Book" or furnishing them with information reports or both. The information contained in the "Red Book" rented to customers was obtained principally from information contained in the files which were acquired by petitioner at the date of organization from the two corporations consolidated and from subsequent reports of its investigators and reporters.

The "Red Book," during the years 1920 and 1921, was largely compiled or prepared by employees not stockholders of petitioner and under the supervision of Miss Dorothea C. Peterson, who also was not a stockholder.

The amounts expended by petitioner in preparing and publishing the "Red Book" were charged on its books to expense. The "Red Book" increased in value from year to year, resulting from the addition of names and information.

Some of the stockholders of the petitioner were actively engaged in petitioner's business, but others were not so engaged. The names of the owners of shares which were active and those not active, and the number of shares held by each during the taxable years, are as follows:

| Stockholders | Jan. 1, 1920, to Sept. 23, 1920 | | Sept. 23, 1920, to Nov. 3, 1920 | | Nov. 3, 1920, to Sept. 15, 1921 | |
|---|---|---|---|---|---|---|
| | Shares active | Shares not active | Shares active | Shares not active | Shares active | Shares not active |
| Allen C, Middleton, attorney | | 100 | | | | |
| Robert O. Cowan | 100 | | 200 | | 170 | |
| Mrs. Robert R. Dornan | | 65 | | 65 | | 65 |
| Sarah W. Cowan | 15 | | 15 | | 40 | |
| Archibald Dornan | | 10 | | 10 | | 10 |
| Julia A. Cowan | | 10 | | 10 | | 15 |
| | 115 | 185 | 215 | 85 | 210 | 90 |

After September 15, 1921, to the end of said taxable year, there was no change of ownership or activity in shares, except that the 10 shares standing in the name of Archibald Dornan were transferred to Edna M. Dornan.

The average holding of stock of the active stockholders and nonactive stockholders on the basis of the number of days during which

they owned shares for the year 1920 was for active stockholders, 47.1 per cent and for nonactive stockholders, 52.9 per cent.

In 1921, the percentage of stock held by active stockholders was 70 per cent and of nonactive stockholders, 30 per cent.

The gross income for the year 1920 was $60,410.76, derived as follows:

| | |
|---|---:|
| From special information reports | $31,824.56 |
| Subscriptions | 28,391.00 |
| Interest | 195.20 |

In that year, there was paid as compensation or salaries to employees:

| | |
|---|---:|
| Nonstockholders | $23,475.58 |
| Stockholders | 8,922.50 |
| Foreign correspondents | 4,793.27 |

The gross income for the year 1921 was $67,683.22, derived as follows:

| | |
|---|---:|
| From special information reports | $34,141.19 |
| Subscriptions | 32,728.75 |
| Interest | 813.28 |

In 1921 there was paid as compensation or salaries to employees:

| | |
|---|---:|
| Nonstockholders | $25,006.69 |
| Stockholders | 12,480.00 |
| Foreign correspondents | 6,921.30 |

The balance sheets of the petitioner at January 1 and December 31, 1920 and 1921 show the following assets and liabilities:

| | Jan. 1, 1920 | Dec. 31, 1920 | Dec. 31, 1921 |
|---|---:|---:|---:|
| **ASSETS** | | | |
| Cash | $5,444.11 | $5,132.99 | $4,314.75 |
| Accounts receivable | 5,772.73 | 6,305.48 | 7,284.05 |
| Liberty bonds, etc. | 5,000.00 | 9,533.05 | 13,683.05 |
| Plant (credit files) | 30,000.00 | 30,000.00 | 30,000.00 |
| Office equipment | | | 1,687.50 |
| | 46,216.84 | 50,971.52 | 56,969.35 |
| **LIABILITIES** | | | |
| Capital stock | 30,000.00 | 30,000.00 | 30,000.00 |
| Surplus | 16,216.84 | 20,971.52 | 25,469.35 |
| Reserve for taxes | | | 1,500.00 |
| | 46,216.84 | 50,971.52 | 56,969.35 |

## OPINION.

LITTLETON: The petitioner contends that its income for the years 1920 and 1921 is ascribable primarily to the activities of its principal stockholders who were regularly engaged in the active conduct of its affairs; that the capital employed in its business is not a mate-

rial income-producing factor and that it is, therefore, entitled to classification as a personal service corporation and to exemption as such, certainly from and after September 23, 1920.

Respondent claims that this contention is not well founded for the reason that petitioner's income can not be ascribed primarily to the activities of its principal stockholders and because capital was a material income-producing factor.

No error other than respondent's refusal to allow such classification is alleged to have been committed in connection with his determination of the deficiencies involved in this proceeding.

Failure to comply with any one of the requirements of the statute, section 200, Acts of 1918 and 1921, is fatal to a claim that a corporation is a personal service corporation.

Since the petitioner is seeking to overturn the determination of respondent, the burden is upon it clearly to establish by competent and satisfactory evidence that it comes within the class of corporations referred to. As stated by the court in *Matteson Co.* v. *Willcuts*, 12 Fed. (2d) 447:

> There is constant temptation to urge that particular corporations, with no right to such favor, be accorded classification as personal service corporations, and the requirements necessary thereto must be substantially observed.
>
> * * * * * * *
>
> Every corporation has full control of its own activities. * * * If it does not fairly observe and keep within the requirements of the law, it should not claim the benefits which the law confers. To nearly comply with the law, or to come within hailing distance thereof, is not enough.

In this case, the evidence indicates that during the taxable years in question only two stockholders were active in the business affairs of petitioner. During 1920, such stockholders owned less than 50 per cent of its outstanding stock and in 1921, 70 per cent thereof. From 16 to 25 employees, clerks and reporters, rendered very valuable services to petitioner in the carrying on of its business; they did so much of its work and work of such a character, that the income of petitioner was very materially increased thereby. The reporters employed by petitioner procured practically all the information embraced in the special reports and these reports furnished customers, produced in 1920 and in 1921, slightly more than one-half of the entire gross income of petitioner in each of those years.

The assets acquired from the two credit companies consolidated, and for which $27,000 par value of stock was issued by petitioner, were very valuable and were a substantial factor in producing the income of petitioner. The rating or "Red Book" and the right to continue publishing the same, acquired from the Consumers Mercantile Agency, Inc., and the names of the customers and the files of the

Pennsylvania Credit Co., Ltd., secured by petitioner, were very valuable and undoubtedly, from the nature of petitioner's business, continued to be valuable and material income-producing factors in petitioner's business.

In the preface to the "Red Book" leased to customers in 1920 and 1921, substantially the same as the "Red Book" used in 1922, and in evidence, it is stated:

> We herewith present the 1922 Edition of the RED BOOK of INDIVIDUAL RATINGS, upon which we have spent considerable more time and money than any other publication we have ever issued.
>
> Since the last issue a capable corps of compilers and reporters has been steadily engaged in gathering information on new risks, obtaining lists of credit customers and experience from many merchants and revising former ratings, enabling us to present the most complete book of INDIVIDUAL RATINGS EVER PUBLISHED.

During each of the years 1920 and 1921, the petitioner served approximately 500 customers by leasing them the "Red Book" or furnishing them credit information reports, and the large income derived therefrom indicates their income-producing character.

The president of petitioner had been connected with the Pennsylvania Credit Co., Ltd., and the evidence indicates no different method of conducting petitioner's business from that of the Pennsylvania Credit Co., Ltd.; neither is there any evidence indicating that there was any change made in the forms used by petitioner from those prepared and used by the Pennsylvania Credit Co., Ltd. It is shown in the evidence that the files and "Red Book" described were used by petitioner and were necessary to enable it to render the services from which it received its income. While the investigators and reporters were subject to the instructions of the officers of the corporation who were stockholders, it can not be said that the income of the petitioner resulting from the services of such investigators and reporters was primarily due to the activities of the stockholders.

The Board is of the opinion that during the taxable years the capital invested by petitioner was a material income-producing factor and also that the income of petitioner can not be ascribed primarily to the activities of the principal stockholders who were regularly engaged in the active conduct of its business affairs. *Matteson Co.* v. *Willcuts*, 12 Fed. (2d) 447; *Record Abstract Co.*, 2 B. T. A. 628; *Home Insurance Agency*, 5 B. T. A. 1020; *Patterson-Andress Co.*, 6 B. T. A. 392; *Cuyahoga Abstract Title & Trust Co.*, 7 B. T. A. 95.

*Judgment will be entered for the respondent.*