FRED J. SPERAPANI AND CECELIA SPERAPANI, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 334–62. Filed April 30, 1964.

*Albert E. Arent* and *John J. Yurow*, for the petitioners.
*Donald W. Howser*, for the respondent.

OPINION

KERN, *Judge:* The issues presented for our decision are: (1) Whether petitioner filed a valid election to have his sole proprietorship taxed as a domestic corporation pursuant to section 1361;[2] (2) whether the proprietorship hereinafter referred to as Columbia

---

[2] SEC. 1361. UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS.

(a) GENERAL RULE.—Subject to the qualifications in subsection (b), an election may be made, in accordance with regulations prescribed by the Secretary or his delegate, not later than 60 days after the close of any taxable year of a proprietorship or partnership owning an unincorporated business enterprise, by the proprietor or all the partners, owning an interest in such enterprise at any time on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), to be subject to the taxes described in subsection (h) as a domestic corporation for such year and subsequent years.

(b) QUALIFICATIONS.—The election described in subsection (a) may not be made with respect to an unincorporated business enterprise unless at all times during the period on or after the first day of the first taxable year to which the election applies or of the year described in subsection (f), as the case may be, and on or before the date of election—

(1) such enterprise is owned by an individual, or by a partnership consisting of not more than 50 individual members;

(2) no proprietor or partner having more than a 10 percent interest in profits or capital of such enterprise is a proprietor or a partner having more than a 10 percent interest in profits or capital of any other unincorporated business enterprise taxable as a domestic corporation;

(3) no proprietor or partner of such enterprise is a nonresident alien or a foreign partnership; and

(4) such enterprise is one in which capital is a material income producing factor, or 50 percent or more of the gross income of such enterprise consists of gains, profits, or

met the qualifications of section 1361 enabling it to be taxed as a domestic corporation and in particular the requirement of section 1361(b)(4) that the enterprise be one "in which capital is a material income producing factor"; (3) if Columbia is entitled to be taxed as a domestic corporation, whether its income includes one-half of the earnings of Associates No. 2 or whether such earnings are taxable to petitioner; and (4) if Columbia is not entitled to be taxed as a domestic corporation and consequently it is not liable for any taxes and petitioner's income tax liability is increased, whether petitioner's tax liabilities for the years in issue may be reduced by the amounts of taxes paid by or on behalf of Columbia for such years.

Petitioner contends that he duly elected and was qualified to elect to have his proprietorship taxed as a domestic corporation under section 1361. Petitioner also contends that Columbia properly included in its taxable income as a domestic corporation in each of the years in issue one-half of the earnings of Associates No. 2. Consequently, petitioner argues that his own only taxable income during each of the years in issue with respect to income from his reporting business is $50,000 received as salary from Columbia, which he reported on his income tax returns. Petitioner's position with respect to the fourth and last of the above-stated issues is that if respondent correctly determined Columbia is not a taxable entity, then it follows that the amounts paid to respondent for the years in issue by or on behalf of Columbia must have been paid by or on behalf of petitioner and accordingly petitioner should be given credit for such payments.

Respondent's position is that Columbia failed to make a valid elec-

income derived from trading as a principal or from buying and selling real property, stock, securities, or commodities for the account of others.

(c) CORPORATE PROVISIONS APPLICABLE.—Under regulations prescribed by the Secretary or his delegate, an unincorporated business enterprise as to which an election has been made under subsection (a), shall, except as provided in subsection (m), be considered a corporation for purposes of this subtitle, except chapter 2 thereof, with respect to operation, distributions, sale of an interest, and any other purpose; and each owner of an interest in such enterprise shall be considered a shareholder thereof in proportion to his interest.

\* \* \* \* \* \* \*

(h) IMPOSITION OF TAXES.—The unincorporated business enterprise as to which an election has been made under subsection (a) shall be subject to—

(1) the normal tax and surtax imposed by section 11,
(2) the accumulated earnings tax imposed by section 531, and
(3) the alternative tax for capital gains imposed by section 1201.

\* \* \* \* \* \* \*

(j) COMPUTATION OF TAXABLE INCOME.—In computing the taxable income of an unincorporated business enterprise as to which an election has been made under subsection (a)—

(1) a reasonable deduction shall be allowed for salary or compensation to a proprietor or partner for services actually rendered; and
(2) there shall be allowed as deductions only such items properly allocable to the operation of the business of such enterprise, except deductions allocable to the proprietor or partners under subsection (l)(2).

tion to be taxed as a domestic corporation under section 1361 in the manner prescribed in the Commissioner's regulations, and that Columbia failed to meet the qualifications prescribed in section 1361(b) to entitle it to make such election. Consequently, respondent has determined in his notice of deficiency and here contends that all income earned by petitioner from his reporting business conducted in the name of Columbia or jointly with Sullivan in the name of Associates No. 2 is includable in petitioner's gross income. Respondent argues alternatively that if we find that Columbia is entitled to report its income as a domestic corporation, then the income earned on business conducted by Columbia alone is taxable to it, but that one-half of the income earned by Associates No. 2 is not includable in Columbia's taxable income and should be included in petitioner's individual income. Respondent's position with respect to the fourth and last of the above-stated issues is that petitioner is entitled to no credit for any taxes paid by or on behalf of Columbia for the reason that any refund due on Columbia's account cannot be applied to petitioner's account.

During each of the years in issue Columbia deducted on its returns, and petitioner included in his taxable income salary in the amount of $50,000 paid to petitioner. Pursuant to his first determination that all of the income of Columbia and one-half of the income of Associates No. 2 are includable in petitioner's gross income, respondent in effect decreased petitioner's taxable income in the amount of $50,000 in each of the years in issue.

The parties have agreed by stipulation that if Columbia is taxable as a domestic corporation but its income does not include one-half of the earnings of Associates No. 2 that there is includable in petitioner's income for each of the years in issue salary from Columbia in the amount of $25,000, rather than $50,000 as reported in the income tax returns filed by petitioner. If we determine that Columbia is taxable as a domestic corporation and its income includes one-half of the earnings of Associates No. 2, then the salary payable to petitioner from Columbia in each of the years in issue is $50,000 as reported in petitioner's returns and as alleged by respondent in his answer to the petition.

Section 1361(a) permits a sole proprietor of a business enterprise, subject to the qualifications in section 1361(b), to elect, in accordance with regulations prescribed by the Secretary or his delegate, to have the sole proprietorship taxed as a corporation.

On March 3, 1958, when petitioner filed the purported election for Columbia, the manner of making the election under section 1361 was prescribed in temporary regulations promulgated as T.D. 6124, ap-

proved and filed February 24, 1955. See T.D. 6124, 1955–1 C.B. 719.[3] The regulations provide that the election shall be made by filing a statement that the proprietor elects under section 1361(a) to have the enterprise treated as a corporation, and by filing the return as prescribed. Paragraph 2 describes the statement of election which must be filed during the first 60 days after the close of the first taxable year of the proprietor. It requires that the statement shall give sufficient information to establish that the enterprise meets the qualifications of section 1361(b), which are that during the period on or after the first day of the taxable year to which the election applies, and on or before the date of election (1) the enterprise is owned by an individual or by a partnership consisting of not more than 50 individual members; (2) no proprietor or partner having more than a 10-percent interest in profits or capital of such enterprise is a proprietor or a partner having more than a 10-percent interest in profits or capital of any other unincorporated business enterprise taxable as a domestic corporation; (3) no proprietor or partner of such enterprise is a nonresident alien or a foreign partnership; and (4) the enterprise is one in which capital is a material income-producing factor, or 50 percent or more of the gross income of such enterprise consists of gains, profits, or income derived from trading as a principal or from buying and selling real property, stock, securities, or commodities for the account of others. The statement must be signed by the electing proprietor or partners and must also contain an agree-

---

[3] The regulations provide in pertinent part as follows:

In order to prescribe temporary rules with respect to unincorporated business enterprises electing to be taxed as domestic corporations, Treasury Decision 6118 [1955–1 C.B. 698], approved Dec. 30, 1954, is hereby amended by adding at the end thereof the following paragraph:

PAR. 23. UNINCORPORATED BUSINESS ENTERPRISES ELECTING TO BE TAXED AS DOMESTIC CORPORATIONS.— (a) *In general.*—Section 1361 permits certain unincorporated business enterprises to elect to be taxed as domestic corporations. If the qualifications stated in section 1361(b) are met, and if a proper election is filed in accordance with the provisions of this paragraph, then an unincorporated business enterprise with respect to which such an election is filed shall be treated for income tax purposes as a domestic corporation under the provisions of section 1361. The election may be made only with respect to taxable years of the partnership, or the proprietor, beginning after December 31, 1953, and ending after August 16, 1954.

(b) *Manner of making election.*— (1) The election shall be made by filing a statement that the partners or the proprietor, as the case may be, elects under section 1361(a) to have the enterprise treated as a corporation, and by filing the return or amended return required by subparagraph (3) within the time prescribed by that subparagraph. The election is void unless perfected by the filing of such return or amended return.

(2) The statement shall be filed during the first 60 days after the close of the first taxable year of the partnership or proprietor to which the election is applicable. The statement shall give sufficient information to establish that the enterprise meets the qualifications set forth in section 1361(b). It shall also contain an agreement to notify the district director with whom the statement is filed if the interest of the electing proprietor or partners in the capital and profits of the enterprise becomes 80 percent or less, or if the enterprise becomes a corporation. The statement shall be signed by the proprietor or all of the partners owning an interest in the enterprise at any time during the period beginning with the first day of the first taxable year to which the election

ment to notify the district director with whom the statement is filed if the interest of the electing proprietor or partners becomes 80 percent or less, or if the enterprise becomes a corporation. Finally, if a statement of election is timely filed, the election must be perfected by filing for such enterprise an income tax return on Form 1120 containing a statement that the return was filed in compliance with the regulations under section 1361.[4]

The statement of election filed by petitioner stated that petitioner's "unincorporated enterprise complies and qualifies with regulations prescribed under Section 1361," but did not contain information to establish that the enterprise met the qualifications of section 1361(b), nor did it contain an agreement to notify the district director if petitioner's proprietorship interest in Columbia became 80 percent or less or if Columbia became a corporation. The statement of election filed by petitioner was timely filed with the district director and it was signed by petitioner. Corporate income tax returns for the years 1957 and 1958 were timely filed for Columbia on Forms 1120, which were signed by petitioner and which contained statements that they were the returns of a section 1361 corporation. They stated that the petitioner was the proprietor of the business electing to be taxed as a corporation, that he resided within the United States, and that the business owned and used depreciable personal property costing over $25,000.

applies and ending on the day the election is filed. For example, a partner or proprietor having an interest at any time during the first taxable year with respect to which the election applies is required to sign the statement even though he holds no interest at the end of such year or at the time of the election. A partner or proprietor who acquires his interest after the end of the first taxable year to which the election applies but prior to the date of the election is also required to consent to the election by signing the statement even though he holds no interest at any time during the first year to which the election is applicable.

(3) If a statement of election is timely filed, the election must be perfected by filing for such enterprise an income tax return on Form 1120 containing a statement that such return has been prepared in compliance with the regulations under section 1361. If the last day prescribed for filing the return for such enterprise (including any extension of time for such filing) falls before the last day of the third month following the month in which the regulations under section 1361 are published in the Federal Register, the election shall be perfected by filing an amended return containing a similar statement, rather than a return, on or before the last day of such third month.

(4) The required statement and the income tax return (and any amended return) shall be filed with the district director of internal revenue with whom the enterprise would be required to file its return if it were a domestic corporation. See section 6091(b)(2).

(5) An election made in compliance with this paragraph shall be irrevocable as provided in section 1361(e) and shall apply to the taxable year for which made and to all subsequent taxable years.

[4] The provisions of T.D. 6124 which relate to the perfection of an election were revoked by T.D. 6332, approved Oct. 30, 1958, and filed Nov. 11, 1958, 1958-2 C.B. 1108, 1112. The change was made in order to reflect provisions of the Technical Amendments Act of 1958 which allowed a taxpayer to revoke his election under sec. 1361 within a certain prescribed period following the promulgation of final regulations under sec. 1361.

Respondent argues that "not less than substantial compliance with the requirements of T.D. 6124 is necessary in order to make an election under section 1361," and that petitioner has not substantially complied with T.D. 6124. Petitioner argues that "filing an unequivocal election to have Columbia taxed as a domestic corporation followed by the filing of a corporation income tax return on behalf of Columbia for the taxable year 1957, both of which clearly set forth that Columbia was an unincorporated sole proprietorship electing to be taxed as a corporation pursuant to Section 1361, constituted substantial compliance with the Treasury Decision." Both parties rely on *Van Keppel* v. *United States*, 206 F. Supp. 42, aff'd. 321 F. 2d 717, and *Georgie S. Cary*, 41 T.C. 214. In our opinion these cases and the case of *Pearce* v. *United States*, 226 F. Supp. 702 (W.D.N.Y. 1964), are not helpful in deciding the instant case. In these cases the petitioners inadvertently failed to file agreements which were required to be filed by section 302(c)(2)(A)(iii), "at such time and in such manner as the Secretary or his delegate by regulations prescribes." The applicable regulations prescribed that the agreement specified in the statute must be in the form of a separate statement in duplicate signed by the taxpayer and attached to his return timely filed for the year. In these cases the taxpayers' returns were audited, the absence of the agreements then was made known to them, and they filed amended income tax returns to which the agreements were attached or proffered such an agreement for filing. It was held in these cases that the statutory requirement to file an agreement was directory and not mandatory, and that the taxpayers had substantially complied with the statute when they filed the agreements with amended returns or proffered such an agreement when its absence was made known to the taxpayer. In the instant case the statement filed by petitioner did not contain the detailed information or agreement prescribed by the regulation and no other statement was subsequently filed or offered for filing. Therefore, it is necessary in order for petitioner to prevail on this issue that we decide that the inclusion of such information and agreement in petitioner's statement was not of the essence of the statute and was not intended by the legislature to be mandatory.

Petitioner relies on *Vaughan* v. *John C. Winston Co.*, 83 F. 2d 370, wherein it was said:

Whether a statutory requirement is mandatory in the sense that failure to comply therewith vitiates the action taken, or directory, can only be determined by ascertaining the legislative intent. If a requirement is so essential a part of the plan that the legislative intent would be frustrated by a noncompliance, then it is mandatory. But if the requirement is a detail of procedure which does not go to the substance of the thing done, then it is directory, and noncompliance does not invalidate the act.

In 2 Sutherland, Statutory Construction, sec. 2802, p. 216 (3d ed.), the following appears:

Generally those directions which are not of the essence of the thing to be done, out which are given with a view merely to the proper, orderly and prompt conduct of the business, and by the failure to obey no prejudice will occur to those whose rights are protected by the statute, are not commonly considered mandatory. Likewise, if the act is performed but not in the time or in the precise manner directed by the statute, the provision will not be considered mandatory if the purpose of the statute has been substantially complied with and no substantial rights have been jeopardized.

In *Indiana Rolling Mills Co.*, 13 B.T.A. 1141, 1144, cited with approval and distinguished on other facts in *General Instrument Corporation*, 35 T.C. 803, 820, we framed the question of whether substantial compliance with a statute had been achieved as "What is the essence of the thing required to be done by this statute?"

In his brief, respondent states that the information and agreement required by the regulation are important in the administration of section 1361 at the time the election is made for purposes of determining whether the qualification requirements of section 1361(b) have been met, and at the time of a change in ownership of 20 percent or more or upon incorporation of the enterprise, which events may result in a liquidation of the section 1361 corporation with concurrent tax effects. See sec. 1.1361–5(b) and –6(c), Income Tax Regs. On brief respondent sums up his discussion concerning the purpose of the regulation as follows:

Hence, the requirement that the owner of the enterprise make a representation of facts establishing prima facie that the enterprise meets the qualifications set forth in section 1361(b) serves an important administrative purpose. It is well known that the respondent is able to audit only a small percentage of the millions of tax returns which are filed every year. This necessitates that returns be classified for examination and that only audits of returns be made which appear to best serve the interest of the revenue collection system. The information which the regulation requires to be presented in the statement of election is necessary in order to permit an orderly classification of the returns of section 1361 corporations in accordance with the standards of classifications of other corporate returns.

It is apparent from this argument of respondent that respondent himself considers that the requirements in the regulation relating to the contents of a statement of election are procedural and therefore directory, since they "are given with a view merely to the proper, orderly and prompt conduct of the business" (2 Sutherland, Statutory Construction, sec. 2802, p. 216 (3d ed.)), and do not relate to the substance or essence of the statute. Even if petitioner had made specific allegations of fact in his statement of election to substantiate his general allegation that the qualification requirements of section

1361(b) were met, the district director would still find it necessary to satisfy himself of the existence of such facts. Similarly, the same tax consequences follow upon a change in ownership, or upon incorporation of the enterprise whether or not the taxpayers have agreed to notify the district director of such changes. In spite of the general assertions in respondent's brief, there has been no satisfactory showing in this case that the filing of the statement referred to by the regulation would materially contribute to "the proper, orderly and prompt conduct" of respondent's functions. There is certainly nothing in the record which would indicate that the respondent in actuality has been in any material way prejudiced by petitioner's failure to comply with that part of T.D. 6124 requiring the filing of a statement of election in addition to the election itself and the proper income tax returns. These returns which were filed by Columbia Reporting Co. contain statements that petitioner is the proprietor of the business and lives within the United States, thus clearly indicating that the "enterprise is owned by an individual" (sec. 1361(b)(1)), and that the proprietor is not "a non-resident alien" (sec. 1361(b)(3)). They also show that the business owned and used depreciable personal property having a considerable cost, which would tend to establish that capital was "a material income producing factor" (sec. 1361(b)(4)). Just what information respondent would consider desirable in order to establish the negative qualification of section 1361(b) which provides that no proprietor shall be a proprietor or a partner of any other unincorporated business enterprise taxable as a corporation is not clear. It would seem that a mere negative statement would be sufficient and this is implicit in the statement in petitioner's notice of election to the effect that his business enterprise complied with the appropriate regulations. Obviously the respondent has not been prejudiced by petitioner's failure to file an agreement to notify respondent of certain events which have never occurred.

Reading section 1361 as a whole and the applicable temporary regulations thereunder, we conclude that the essence of the statute is that a notice of election be filed with the district director and that such election be perfected by filing a corporation income tax return containing a statement that it is the return of a section 1361 corporation. That part of the regulation requiring that the statement of election contain specific allegations of fact showing that the qualifications of section 1361(b) have been met, and an agreement to notify the district director in the event of incorporation of the enterprise or a change in ownership, relate to details of procedure and do not go to the essence of the statute. Thus they are merely directory. Inasmuch as petitioner filed a timely election and timely corporation income tax returns for Columbia for the years 1957 and 1958, all of which clearly

set forth that Columbia was an unincorporated sole proprietorship electing to be taxed as a corporation pursuant to section 1361 and claiming that it was qualified to do so under the regulations, and these steps constituted the essential statutory requirements for an election, we conclude that there was a substantial compliance with the statute and temporary regulation, and that a valid election for Columbia to be taxed as a domestic corporation was made.

We are not persuaded to a different view by respondent's argument that Congress approved the manner in making the election as prescribed in T.D. 6124. Respondent's argument is based on legislative history which resulted in the Technical Amendments Act of 1958, 72 Stat. 1606, 1649, enacted on September 2, 1958, which is subsequent to the dates when petitioner filed the notice of election and corporation income tax return for Columbia for the year 1957. At most, such action by the Congress evidences congressional approval of the temporary regulation and gives to it the effect of law. See *Cammarano* v. *United States*, 358 U.S. 498; *Helvering* v. *Winmill*, 305 U.S. 79. Even if the temporary regulation has the effect of law, it does not alter our view that the manner prescribed for making the election is directory, and not mandatory, and that petitioner substantially complied with the essential provisions of the regulation.

It is conceded by respondent that Columbia satisfies all of the qualification requirements of section 1361(b) but one. The parties disagree on whether or not Columbia was an enterprise in which capital was a material income-producing factor as required in section 1361(b)(4). Both parties rely on section 1.1361–2(e)(2), Income Tax Regs., which provides in pertinent part as follows:[5]

(2) The determination of whether capital is a material income-producing factor must be made by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business (other than income excluded from gross income of the enterprise under section 1361(i)(1)) is attributable to the employment of capital in the business conducted by the enterprise. Capital is not a material income-producing factor where gross income of the enterprise consists principally of fees, commissions, or other compensation for personal services performed by the owners or employees of the enterprise. Thus, an enterprise engaged in rendering professional services such as law, accounting, medicine, or engineering, ordinarily is not an enterprise in which capital is a material income-producing factor. On the other hand, capital is ordinarily a material income-producing factor if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment.

There have not been any cases decided to date under section 1361 with respect to the requirement that capital be a material income-producing factor in the enterprise. However, both parties have di-

---

[5] See also S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 119, 456, which is substantially to the same effect.

rected us to several decisions construing analogous language as it appeared in section 200 of the Internal Revenue Acts of 1918 and 1921, section 725 of the Internal Revenue Code of 1939, relating to personal service corporations, and section 704(e)(1) of the Internal Revenue Code of 1954, relating to family partnerships and its predecessors, sections 191 and 3797(a)(2) of the Internal Revenue Code of 1939. The parties are in agreement that on the basis of such cases, capital will be deemed to be a material income-producing factor when it "gives character to a sizable portion of the operations of the corporation," but if capital is utilized merely in the form of salaries, wages, or office rent it is not a material income-producing factor. *Edward P. Allison Co.* v. *Commissioner*, 63 F. 2d 553, 558, affirming 22 B.T.A. 1371. See also *Graham Flying Service* v. *Commissioner*, 167 F. 2d 91, affirming 8 T.C. 557, certiorari denied 335 U.S. 817; *Hubbard-Ragsdale Co.* v. *Dean*, 15 F. 2d 410, affd. 15 F. 2d 1013. Petitioner argues that capital has been found to give character to a sizable portion of the operations of a corporation when it consisted of a plant and equipment necessary to the conduct of the business. *Graham Flying Service* v. *Commissioner, supra; Atlanta-Southern Dental College* v. *Commissioner*, 50 F. 2d 34, affirming 15 B.T.A. 1325; *Beulah H. Nichols*, 32 T.C. 1322, 1328–1329; *Fairfax Mutual Wood Products Co.*, 5 T.C. 1279; or cash and accounts receivable, *Wagner-Taylor-Edson Co.*, 7 B.T.A. 268; *W. J. Byrnes & Co.*, 5 B.T.A. 175; *Kossar & Co., Inc.*, 4 B.T.A. 1164; or contracts, leases, and formulae, *Newam Theatre Corporation*, 1 B.T.A. 887; *Scheffler Hair Colorine Co.*, 1 B.T.A. 61; *Cotton Hotel Co.* v. *Bass*, 7 F. 2d 900; *H. D. & J. K. Crosswell, Inc.*, 6 B.T.A. 1315; and *Vermillion Coal Co.*, 12 B.T.A. 1161. The types of businesses in which capital has been held to be a material income-producing factor include a flying school, *Graham Flying Service* v. *Commissioner, supra;* a dental school, *Atlanta-Southern Dental College* v. *Commissioner, supra;* a credit information service, *Commercial Reference Co.*, 7 B.T.A. 384; and a medical partnership where capital was needed to purchase X-ray equipment and supplies, *Beulah H. Nichols, supra.*

We agree with petitioner that these cases support the conclusion that "capital was necessary to the conduct of Columbia's business and gave character to a sizable portion of Columbia's operations." In order to operate successfully Columbia required financial resources, as we have set out in detail in our findings, to pay large bonuses in order to obtain contracts, to cover the cost of operating under such contracts during the first few months of the fiscal year before revenues were collected from such contracts, to enable it to deliver transcripts on an immediate-delivery basis even though a particular hearing would extend for several months and Columbia would not bill for the transcripts delivered until sometime after the

conclusion of the hearings, to enable it to carry out its contractual obligations to remain as a reporter for an agency for an entire fiscal year even though it was known during the fiscal year that such contract would result in a substantial loss to Columbia, and for the purpose of obtaining performance bonds for the agencies with which it contracted upon the payment of a premium only and without having to post collateral. Columbia's capital consisted of cash on deposit in the amounts of $115,248.12, $100,823.48, and $68,117.07 on December 31, 1956, 1957, and 1958, respectively, and accounts receivable on these dates in the respective amounts of $135,149.16, $183,793.16, and $46,671.46. It also had during the years in issue a plant, machinery, and equipment necessary to produce transcripts, including electric typewriters, duplicating machines, a multilith duplicating machine, a Xerox machine, and an automobile. The contracts it owned to be the official and exclusive reporter for several of the major Federal agencies also constituted a part of its capital assets. Because of such assets Columbia was able to obtain other contracts through unsolicited invitations from agencies to do their reporting work. Columbia also used its contracts as evidence of its ability to comply with the bids it made for new work.

Columbia's gross income consists principally of revenues derived from the sale of transcripts to the public, and in some instances to Federal agencies. As such, its gross income does not consist of fees, commissions, or other compensation for personal services performed by the owner or employees of the enterprise, as in enterprises engaged in rendering professional services, such as law, accounting, medicine, or engineering. Cf. *Farnham Manufacturing Co.*, 13 T.C. 511; *Trout-Ware, Inc.*, 11 T.C. 505; *H. Newton Whittelsey, Inc.*, 9 T.C. 700. Accordingly, we conclude that Columbia was an enterprise in which capital was a material income-producing factor and Columbia qualified in all respects to be treated as a domestic corporation under section 1361.

Respondent's next contention is that, even though petitioner's proprietorship Columbia should be properly taxed as a domestic corporation under section 1361, its taxable income would not include any part of the net earnings of Associates No. 2 because "all of the partners owning an interest in such business enterprise [Associates No. 2] did not file an election under section 1361" and consequently the one-half of such earnings is taxable to petitioner. As we have found in our findings of fact, economic necessity made it customary in the reporting business for two or more reporters to join together for the purpose of bidding for and performing a particular reporting contract. Petitioner carried on his business in the form of a sole proprietorship trading as Columbia Reporting Co. Section 1361(c) provides that an unincorporated enterprise electing to be taxed as a domestic cor-

poration "shall * * * be considered a corporation * * * with respect to operation, distributions, sale of an interest, and any other purpose." This Court has interpreted this section to mean that although a proprietor owns the assets of his business enterprises, for purposes of Federal income taxation, the proprietor will be considered as no longer owning them after he elects under section 1361. *Estate of David Wein*, 40 T.C. 454, affd. 330 F. 2d 957. The facts here show that the "pseudo corporation" Columbia, which was the operating arm of Associates No. 2, earned the income itself on the FPC contract. Thus, although petitioner owned the assets of Columbia, the "pseudo corporation" Columbia and not petitioner, for purposes of Federal income taxation, is deemed to own the assets, specifically the contractual rights of petitioner under his contract with Sullivan and to have earned the income from reporting on the FPC contract. See *Estate of David Wein, supra.* The facts that Sullivan did not join in the election filed by petitioner and that petitioner and Sullivan filed no election that Associates No. 2 be taxed as a corporation do not preclude the earnings of Columbia resulting from its partnership or joint venture with Sullivan from being taxed thereon as a domestic corporation. Sullivan was not a partner owning an interest in Columbia, but Columbia, which is to be treated as a corporation with respect to its operation, became a partner or joint venturer in Associates No. 2 and received its earnings therefrom in its role as a "pseudo corporation." There is nothing novel about a corporation being treated as a partner or joint venturer in an unincorporated business enterprise for purposes of Federal income taxation. See, e.g., *Bentex Oil Corporation*, 20 T.C. 565; *Maggio Bros. Co.*, 6 T.C. 999; *Charles H. Steffey, Inc.*, 23 B.T.A. 913.

One-half of the earnings of Associates No. 2 was properly included in Columbia's income which it reported on its corporation income tax returns. No part of such income for the taxable years 1957 and 1958 was includable in petitioner's individual income for these years as determined by respondent.[6]

---

[6] Petitioner also argues that in analogous cases where a corporation performs all the work in a business enterprise but attempts to have the income from the enterprise taxed to its stockholders, the respondent has successfully argued that such income is taxable to the corporate entity which earned it pursuant to sec. 482, I.R.C. 1954, and its predecessor sec. 45, I.R.C. 1939. See *Forcum-James Co.*, 7 T.C. 1195, remanded pursuant to stipulation 176 F. 2d 311; *Advance Machinery Exch.* v. *Commissioner*, 196 F. 2d 1006, affirming a Memorandum Opinion of this Court, certiorari denied 344 U.S. 835. Respondent relies on other cases reaching the opposite result. See *Miles-Conley Co.*, 10 T.C. 754, affd. 173 F. 2d 958; *Briggs-Killian Co.*, 40 B.T.A. 895. We do not deem it necessary to resolve this argument between the parties in order to dispose of the issue before us. Sec. 482 provides that where two or more business organizations are owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may allocate gross income, deductions, credits, or allowances between or among these business organizations if he determines that it is necessary to prevent evasion of taxes or clearly to reflect the income of the business organizations. Sec. 482 is inapplicable to the instant case because Associates No. 2 and Columbia are not owned nor controlled directly or indirectly by the same interests. See *Hamburgers York Road, Inc.*, 41 T.C. 821 (1964).

In view of our decision it is not necessary for us to decide whether petitioner's tax liabilities for the years in issue may be reduced by the amount of taxes paid by or on behalf of Columbia for such years. Because of certain uncontested determinations made by respondent,

Reviewed by the Court.

*Decision will be entered under Rule 50.*

BRUCE, *J.*, concurs in the result.

PIERCE, *J.*, dissents.

---

TRAIN, *J.*, dissenting.   I respectfully dissent.

Section 7805 gives the Secretary general authority to prescribe "all needful rules and regulations" for the Code's enforcement.   However, in section 1361 Congress saw fit to add with particularity that the election under that section is to be made under regulations prescribed by the Secretary, most probably in recognition of the fact that such an election might involve administrative problems whose resolution could best be left to administrative regulation.

The decision of the majority turns upon whether the regulatory requirements of T.D. 6124 are "mandatory" or "directory."   So phrased, I believe this approach simply obscures the issue.   The regulation here in question is neither unreasonable nor otherwise invalid.   I do not understand the majority to suggest to the contrary.   Under these circumstances, I see no basis whatsoever for sanctioning noncompliance, no matter what characterization or semantic label one attaches to the regulation.

Essentially, I believe the majority has concluded that the regulatory requirements are not really important to the administration of the section, effectively substituting, in this respect, the judgment of the Court for that of the Secretary.

OPPER and RAUM, *JJ.*, agree with this dissenting opinion.