The **NOBLE MOTOR COMPANY,**
Plaintiff,

v.

**UNITED STATES** of America,
Defendant.

Civ. No. 14304.

United States District Court
D. Maryland.
July 22, 1964.

Charles E. Wheeler, Easton, Md., (Jacques T. Schlenger, and Frederick Steinmann, Baltimore, Md., on brief) for plaintiff.

Victor Schnee, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Rufus E. Stetson, John Hammerman, Attys., Dept. of Justice, Washington, D. C., and Thomas J. Kenney, U. S. Atty., Baltimore, Md., on the brief), for defendant.

WINTER, District Judge.

Whether plaintiff, The Noble Motor Company (Taxpayer), has qualified to obtain the special tax treatment granted by the Dealer Reserve Income Adjustment Act of 1960, P.L. 86–459, 74 Stat. 124, is the question to be decided. It arises because Taxpayer, claiming the benefits of that Act, has sued to recover a tax refund [1] in the amount of $4,842.-63,[2] plus interest, for taxes paid in the calendar year 1953. Although the defendant vigorously contests Taxpayer's right to any refund, the facts are all stipulated. Specific detailed findings of fact are unnecessary and only general, operative facts will be stated.

Taxpayer, a Maryland corporation, was and is engaged in the business of selling and servicing new and used automobiles and farm machinery in Easton, Maryland. It has been so engaged since its organization in 1947. Not all sales of automobiles were made for immediate cash payment. For those sold on a deferred payment plan, Taxpayer would take promissory notes, and, pursuant to its agreement with a finance company, would sell the notes, with recourse, to the finance company, at a discount. Such agreement permitted the finance company to retain 3% of the discounted price, the amount of the retention being credited by Taxpayer to an account termed, "Reserve for Finance Company Commissions." This account is sometimes called the dealer's reserve account. The purpose of this reserve was to enable the finance company to reimburse itself, as it had a right to do under the with recourse endorsement, should the purchaser of an automobile default in any payment due under his note. As purchasers of automobiles made final payments on their notes, Taxpayer was entitled to receive from the finance company the amount which had been retained, i. e., 3% of the discounted price of the notes. In fact, payments were not immediately made, so that on December 31 of each of the years 1952 through 1958, the actual reserve exceeded the amount of the required reserve.[3]

---

1. Jurisdiction is conferred by 28 U.S.C.A. § 1346.

2. $4,086.61 in taxes, plus interest amounting to $756.02, previously paid by Taxpayer.

3. As of December 31:

| Year | Outstanding Notes | 3% Reserve | Reported Reserve |
|------|-------------------|------------|------------------|
| 1952 |                   | $3,274.97  | $ 7,114.18       |
| 1953 |                   | 4,089.17   | 7,236.39         |
| 1954 |                   | 3,681.00*  | 7,268.86         |
| 1955 | $121,533.72       | 3,646.01   | 6,798.95         |
| 1956 | 171,889.40        | 5,156.68   | 10,119.01        |
| 1957 | 194,954.41        | 5,848.63   | 7,564.71         |
| 1958 | 159,441.70        | 4,783.25   | 6,363.56         |
| 1959 |                   |            | 367.91           |

* Estimated as mean between 1952 and 1953

For each of the calendar years 1953 to 1959, Taxpayer filed corporation income tax returns using the accrual basis of accounting. Prior to 1959, Taxpayer accrued on its books payments due it from the finance company stemming from the operation of the reserve account in the amounts set forth in footnote 3, under the "Reported Reserve" column, but did not treat or report them as income until actually received in cash.

In 1957 defendant examined Taxpayer's books and its 1953 return and asserted a deficiency, on the ground that Taxpayer should have included the entire balance in the reported reserve account, amounting to $7,236.39, in its income for that calendar year. The deficiency asserted amounted to $5,890.56.[4] Taxpayer paid this amount and, undoubtedly heartened by the decision in Johnson v. Commissioner of Internal Revenue, 233 F.2d 952 (4 Cir. 1956), promptly filed a claim for partial refund.[5] It should be noted, however, that Taxpayer sought only a *partial* refund. It conceded that it should not have excluded from income for 1953 the entire sum of $7,236.39, but rather only the sum of $4,089.17, which represented 3% of the outstanding retentions. The difference between these two figures, plus an additional claimed reduction in the reported reserve account from $7,236.39 to $6,341.90, resulted in Taxpayer's claim that it was entitled to a refund amounting to $4,086.61 plus $756.02 refund of interest. Significant, also, was Taxpayer's claim that $7,236.39 did not represent the correct balance in the reserve account, but, rather, that $6,341.90 was the correct figure, because Taxpayer owed the finance company $755.09 under other provisions of their agreement.

Because defendant did not acquiesce in Johnson v. Commissioner of Internal Revenue, supra, Taxpayer's claim for a refund was denied. Taxpayer then filed suit in this Court (Noble Motor Company v. United States of America, Civil Action No. 10211) for recovery of $4,086.61 in taxes, plus $756.02 in interest, a total of $4,842.63, with interest to the date of repayment. While the suit was pending, the Supreme Court of the United States decided Commissioner of Internal Revenue v. Hansen, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). That case held that two automobile dealer taxpayers, and one house trailer dealer taxpayer, filing income tax returns on an accrual basis, accrued income in the year of their sales of installment paper to finance companies because they acquired a fixed right to receive the percentage of the purchase money that was retained by the finance companies and credited to the reserve accounts, notwithstanding that payment thereof was by agreement withheld by the finance companies. The decision resolved a conflict among the Seventh, Eighth and Ninth Circuits.[6] Although the *Johnson* decision in the Fourth Circuit was not specifically reviewed, the fact of the decision and its holding were noted by the Supreme Court, 360 U.S., at p. 450, 79 S.Ct., at p. 1273, footnote 1. Needless to say, the authority of the *Johnson* decision was substantially eroded by the decision in *Hansen*. By stipulation, Civil Action No. 10211 in this Court was dismissed, with prejudice, upon payment of costs by Taxpayer.

Before Civil Action No. 10211 was dismissed, defendant, in 1960, conducted an examination of Taxpayer's 1957 and 1958 income tax returns. As a result of the

4. This figure was derived from computing, on additional income in the amount of $7,236.39, normal tax and surtax, which amounted to $3,411.51, and excess profits tax, which amounted to $1,538.54. To the sum of these, i. e., $4,950.05, was added interest in the amount of $940.51.

5. That case held, as did four other circuits, that reserves of the type involved in this case did not constitute income to an accrual basis taxpayer, until the amounts represented thereby became payable. See footnote 8, infra.

6. Baird v. Commissioner, 256 F.2d 918 (7 Cir. 1958); Glover v. Commissioner, 253 F.2d 735 (8 Cir. 1958); Hansen v. Commissioner, 258 F.2d 585 (9 Cir. 1958).

examination, defendant, *inter alia,* proposed a credit adjustment of $1,310.26 to reflect a decrease to $5,926.13 on Taxpayer's books of its reserve for finance company commissions on December 31, 1958.[7] Taxpayer consented to this adjustment.

By the time the Supreme Court decided the *Hansen* case supra, the United States Court of Appeals for four circuits had reached the same conclusion as the United States Court of Appeals for this circuit.[8] The result was that a great number of taxpayers were required to make substantial payments of taxes for prior years in the current year, 2 Mertens, Federal Income Taxation (1961 Rev. Ed.), § 12.-67a. To alleviate this hardship, Congress enacted the Dealer Reserve Income Adjustment Act of 1960, supra, which had as its effective date May 13, 1960.[9]

In general, the Act provided eligible taxpayers who elected to have its provisions apply with two alternatives for accounting for the adjustments to income resulting from a change to a proper method of reporting dealer reserve income, 2 Mertens, supra, § 12.67a. The one alternative would permit the Taxpayer to treat the correction of the method of reporting dealer reserve income as a *required* change in the method of accounting. In other words, the change in

treatment of dealer reserve income would be taxed as an *involuntary* change in the method of accounting under § 481 of the 1954 Internal Revenue Code, 26 U.S.C.A. § 481. This was the choice offered by Section 3 of the Act. Its advantage was that if the change in accounting method were involuntary there was excluded from income in the "year of change" any part of the adjustment which was attributable to years prior to the "year of change."[10] This alternative is the one sought to be adopted by Taxpayer.

The other alternative provided in Section 4 of the Act was to have § 481 of the Internal Revenue Code of 1954, supra, not apply, and to pay the increase in taxes in installments over a period of time not exceeding ten years. See discussion, 2 Mertens, supra, §§ 12.67a–12.67d.

In order to adopt the first alternative, a taxpayer had to meet certain requirements under the Act.[11] One requirement was that the taxpayer "before September 1, 1960, makes an election under section 3(a) * * * of this Act," Act, § 2(3). This requirement was also repeated in Section 3(a) (2) of the Act. The Act does not define the manner of making an election, but § 5(f) provides:

"(f) Regulations.—The Secretary of the Treasury or his delegate shall prescribe such regulations as may be

7. This latter amount was an adjustment from the amount shown on Taxpayer's books in the amount of $6,363.56, see footnote 3, supra. Its purpose was to give effect to the adjustments claimed by defendant, which were the subject of Taxpayer's 1957 claim for refund, but never made in its books.

8. Keasbey & Mattison Co. v. United States, 141 F.2d 163 (3 Cir. 1944); Texas Trailercoach v. Commissioner, 251 F.2d 395 (5 Cir. 1958); Glover v. Commissioner, 253 F.2d 735 (8 Cir. 1958); Hansen v. Commissioner, 258 F.2d 585 (9 Cir. 1958).

9. For the legislative history, see: United States Code Congressional and Administrative News, 86th Congress, 2nd Session, 1960, p. 1974.

10. "§ 481. *Adjustments required by changes in method of accounting*
"(a) *General rule.*—In computing the taxpayer's taxable income for any taxable

year (referred to in this section as the 'year of the change')—
"(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
"(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, *except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the Method of accounting initiated by the taxpayer.*" (emphasis supplied)

11. Except for the requirement hereafter discussed in the text, there is no claim that Taxpayer failed to meet the other requirements.

necessary to carry out the purposes of this Act, including regulations relating to—

\* \* \* \* \* \*

"(2) the manner in which the elections provided by this Act are to be made."

In the exercise of the authority granted by Section 5(f) of the Act, the Secretary issued Treasury Regulations, Section 1.9002–8, 26 C.F.R. § 1.9002–8, effective September 1, 1960. The pertinent portion of the Regulation is:

"SEC. 1.9002–8 MANNER OF EXERCISING ELECTIONS.

\* \* \* \* \* \*

"(b) *Time and manner of making elections.—*

\* \* \* \* \* \*

"(2) *Election to have section 481 apply.* An election under section 3 of the Act shall be made in the form of a statement which shall include the following:

"(i) A clear indication that an election is being made under section 3 of the Act;

"(ii) Information sufficient to establish eligibility to make the election; and

"(iii) The year of change as defined in section 3(b) of the Act.

An amended income tax return reflecting the increase or decrease in tax attributable to the election shall be filed for the year of change together with schedules showing how the tax was recomputed under section 481 of the Code. If income tax returns have been filed for any taxable years subsequent to the year of change, amended returns reflecting the proper treatment of dealer reserve income for such years shall also be filed. \* \* \* *Any amended return shall be filed with the office of the district director with whom the taxpayer files his income tax return for the taxable year in which the election is made and, if practicable, on the same date the statement of election is filed, but amended returns shall be filed in no event later than November 30, 1960, unless an extension of time is granted under section 6081 of the Code.* Whenever the amended returns do not accompany the statement of election, a copy of the statement shall be submitted with the amended returns." (emphasis supplied)

By letter dated August 18, 1960, addressed to the District Director of Internal Revenue, Baltimore, Maryland, Taxpayer elected to have § 481 of the Internal Revenue Code of 1954 apply with respect to its treatment of dealer reserve income. The letter recited that for the year 1951, and subsequent years, Taxpayer computed taxable income under an accrual method of accounting and treated any dealer reserve income which should have been taken into account for such taxable year as accruable for a subsequent taxable year. The history of Taxpayer's having paid a deficiency for the calendar year 1953 in the amount of $4,950.00, plus interest, and its subsequent claim and suit for refund, were recited. The letter advised that the "year of change" as defined by § 3(b) of the Act was the year 1953. The letter concluded, "Amended returns for that year and subsequent years will be filed by November 30, 1960." However, a subsequent letter, dated November 25, 1960, was also written, in which Taxpayer took the position that its returns as filed for 1953 through 1959 were correct and impliedly, if not specifically, stated that Taxpayer would not file amended returns for 1953 and subsequent years, as required by the Regulation. The full text of this letter is set forth below.[12]

12.             "November 25, 1960.
District Director of Internal Revenue
707 North Calvert Street
Baltimore, Maryland
Gentlemen:

In our letter dated August 18, 1960 claiming refund in connection with the Dealer's Finance Reserve Adjustments provided under the present law, we stated that we would file amended tax returns

It should be noted that by this letter, Taxpayer was claiming a refund of $4,-950.05, plus interest, notwithstanding that in its 1957 suit in this Court, Taxpayer claimed a refund of $4,842.63, plus interest.

By letter dated July 26, 1961 Taxpayer was advised that its claim for refund was proposed to be disallowed, because it did not file amended returns for the year 1953. It protested the proposed action by its letter of October 4, 1961, stating, *inter alia,* "Amended tax returns for the years 1953–1959 were not filed as the originals were deemed correct by Taxpayer's certified public accountants." But, by letter dated April 18, 1962, Taxpayer was given formal notice that its claim for refund of $4,842.63 was disallowed.[13] This suit followed on December 19, 1962.

To avoid its patent lack of strict compliance with the requirement of the regulation that amended returns for the "year of change" (1953) and subsequent years be filed by November 30, 1960 (unless a further extension was requested and granted under the authority of 26 C.F.R. § 1.9002–8(b) (2); 26 U.S.C.A. § 6081), Taxpayer advances two major contentions. First, it is claimed that the regulation, to the extent that it requires the filing of amended returns as a condition precedent to the favorable tax treatment afforded by § 3 of the Act is invalid because it is *ultra vires.* In other words, it is claimed that the Secretary lacked statutory authority to establish this requirement, and that the requirement is unnecessary and unreasonable. Taxpayer's second contention is that it substantially complied with the provisions of the regulations in the sense that whatever information the Secretary sought to obtain by requiring the filing of amended returns was already in his possession in view of the two investigations conducted by his representatives and the filing of the 1957 suit for refund in this Court.

Section 5(f) of the Act, supra, clearly vested the Secretary with authority to prescribe regulations necessary to carry out the purposes of the Act, including regulations relating to the manner in which the elections provided by the Act were to be made. Supplementary to this special authority, the Secretary already possessed authority under 26 U.S.C.A. § 6011 to adopt regulations requiring taxpayers to file returns or statements,[14] and, under 26 U.S.C.A. § 7805, to " * * * prescribe all needful rules and regulations * * * including all rules and regulations as may be necessary by reason of

for the years 1953 thru 1959 by November 30th. Our certified public accountants have advised us that our returns as filed for 1953 thru 1959 are correct, and that our request for refund is based upon an audit by your organization which was conducted by L. G. Hayman. Your report is dated March 4, 1957 and shows a deficiency of $4,950.05. This adjustment was due entirely to the change in the method of accounting for finance income. The corporation's records included the finance commissions as income only when received. Mr. Hayman's adjustment brought the outstanding dealer's finance reserve of $7,236.39 in as income in the year 1953. The above is our basis for this claim for refund.

If additional information is needed in connection with this matter, please do not hesitate contacting this office. Your prompt attention to this matter will be greatly appreciated.

THE NOBLE MOTOR COMPANY
BY: _____
JOHN W. NOBLE, PRES."

et f

13. Between Taxpayer's letter of November 25, 1960 and defendant's letter of April 18, 1962, Taxpayer amended its claim to reduce it from $4,950.05 to $4,842.63, exclusive of interest, so as to make it conform to the amount claimed in the 1957 suit.

14. "§ 6011. *General requirement of return, statement, or list*

"(a) *General rule.*—When required by regulations prescribed by the Secretary or his delegate any person made liable for any tax imposed by this title, or for the collection thereof, shall make a return or statement according to the forms and regulations prescribed by the Secretary or his delegate. Every person required to make a return or statement shall include therein the information required by such forms or regulations. * * *"

any alteration of law in relation to internal revenue."

■■ Since the Secretary had ample statutory authority to do what was reasonable and necessary, including the filing of returns, the question then becomes one of whether amended returns for the "year of change" and subsequent years are reasonable and necessary in carrying into effect the tax relief granted by the Act. One who insists that a regulation is invalid " * * * must make its invalidity so manifest that the court has no choice except to hold that the Secretary has exceeded his authority and employed means that are not at all appropriate to the end specified in the act of Congress," Boske v. Comingore, 177 U.S. 459, 470, 20 S.Ct. 701, 44 L.Ed. 846 (1900). Generally, a regulation addressed to and reasonably adapted to the enforcement of an Act of Congress is valid if it does not conflict with express statutory authority, Maryland Casualty Company v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L.Ed. 297 (1920). See also, International Ry. Co. v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 66 L.Ed. 341 (1921); and Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 134, 56 S.Ct. 397, 80 L.Ed. 528 (1936). Procedural regulations, such as that in the case at bar, particularly where promulgated pursuant to a specific grant of authority, such as § 5(f) of the Act, are generally upheld, Surrey, The Scope and Effect of Treasury Regulations, 88 U. of Pa.L.Rev. 556 (1940); Alvord, Treasury Regulations and the Wilshire Oil Case, 40 Col.L.Rev. 252 (1940).

■ The reasonableness and necessity of requiring the filing of amended returns for the "year of change" and subsequent years is apparent without extensive discussion. The Act was designed to meet a particular situation. It had a period of limited effectiveness. It was passed May 13, 1960 and, by § 2(3) of the Act, the right to elect expired September 1, 1960. Thus, within a short period of time many taxpayers eligible for relief under the Act would apply to defendant for the benefits of the Act. Each case would require a complex analysis and computation of the taxpayer's books and records and past tax liability.

Consistent with the basic philosophy of United States taxation of avoiding the creation of an overwhelming bureaucracy and consequent uneconomic return from taxes imposed, the regulation required self-assessment. The Secretary obviously concluded to require taxpayers, by self-assessment, to compute in the first instance the amount of refund to which they claimed they were entitled in the "year of change" and to show how the adjustments in the "year of change" would be reflected in subsequent years to and including the current year. The alternative would have been for the Secretary, for the one time flood of applications for tax relief, to assume the burden of locating old returns of taxpayers, including the additional burden which would exist where taxpayers had moved over a period of time and had filed returns in more than one district, to compute the adjustments due each taxpayer, and to carry the adjustment forward from the "year of change" to the then current year, with the consequent consumption of time and manpower and consequent delay of paying refunds to taxpayers entitled thereto. The effect of the provision of the regulation requiring the filing of amended returns would be to require the submission of data relative to the tax refund due each taxpayer on a uniform and complete basis, arranged such that processing and verification of computations could be readily accomplished. That these objectives are worthy and sustain the reasonableness and necessity of this requirement of the regulation is established by Commissioner of Internal Revenue v. Lane-Wells Co., 321 U.S. 219, 223–224, 64 S.Ct. 511, 88 L.Ed. 684 (1944). See also, Angelus Milling Co. v. Commissioner, 325 U.S. 293, 299, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945).

Viewed in the light of the objectives and purposes of the portion of the regulation in question, Taxpayer's acts do not amount to substantial compliance. Indeed, they do not demonstrate that Tax-

payer acted in good faith when, in its letter dated November 25, 1960, it flatly claimed, " * * * our returns as filed for 1953 thru 1959 are correct * * *." This is so because after having filed Civil Action No. 10211 in this Court, and after having consented to the adjustments in its books resulting from defendant's 1960 examination and, indeed, paid a deficiency assessment in connection therewith, Taxpayer manifestly knew that its returns for 1953 through 1959 were not correct. It is not without significance that at the time it was claiming that these returns were correct, Taxpayer claimed a refund, exclusive of interest, in the amount of $4,950.05, and subsequently reduced its claim for refund, after the date that it was under an obligation to file amended returns had expired, to $4,842.63. The mere fact that an initial claim for refund may seek a sum greater than that which a taxpayer ultimately concedes is due does not in itself impugn the bona fides of his original claim, but where, as here, the Taxpayer, or its certified public accountants, by a careful consideration of what had transpired in the past, was chargeable with knowlege that its original claim was excessive, and that it had recently claimed an inconsistent lesser amount, Taxpayer's assertion of good faith is unacceptable.[15]

Even if Taxpayer's contention that defendant was in possession of all of its returns from 1952 through 1959 and, of necessity, had assembled those returns in connection with Taxpayer's 1957 suit for refund in this Court, and defendant's examination of Taxpayer's returns for 1957 and 1958 is accepted, it does not follow, as Taxpayer asserts, that defendant readily could have made the computation of the correct amount of refund to which Taxpayer was entitled. In order to make a correct computation it would seem, as a minimum, that defendant would need to know the correct closing balance of dealer's reserves on December 31, 1952, the correct closing balance of dealer's reserves on December 31, 1953, and the correct closing balance of dealer's reserves on December 31, 1959. The correct closing balance for December 31, 1952 was not known, for 1953 Taxpayer included in dealer's reserves items which were never dealer's reserves even under Taxpayer's theory of accounting prior to the decision in the *Hansen* case, supra, and for the years 1953–1958, Taxpayer made no proper segregation between dealer's reserves to which Taxpayer was entitled, but were unpaid, and dealer's reserves to which Taxpayer would ultimately become entitled, but were not payable until collected, see footnote 3, supra. Viewed in this light, Taxpayer's assertion that defendant possessed the information necessary to compute correctly the refund to which Taxpayer was entitled is factually untrue, and Taxpayer's assertion that it had substantially complied with the regulation by having furnished defendant with necessary information is unavailing.[16]

The deficiencies in Taxpayer's returns and the information in the hands of defendant serve to distinguish this case from that of Sperapani v. Commissioner, 42 T.C. 308, (1964), relied on by Taxpayer. That case concerned an election by a proprietorship to be taxed as a cor-

15. This Court does not consider that the public policy in support of self-assessment was overturned by Taxpayer's statement in its letter of November 25, 1960, made on the eve of the expiration of the qualification date, "If additional information is needed * * * please do not hesitate contacting this office." Such a strong public policy is not so lightly to be reversed. Taxpayer's further argument that it would have been in strict compliance with the regulation had it simply refiled its original 1953–1959 returns making them "Amended" is not persuasive. This argument assumes the conclusion. Had Taxpayer followed this course there would still be, in the mind of the Court, a serious question of Taxpayer's bona fides in the light of what had happened in the past.

16. The impossibility of defendant's making a correct computation of the amount of refund, if any, to which Taxpayer would have been entitled is a complete answer to Taxpayer's argument that defendant was not prejudiced by Taxpayer's omissions, or that Taxpayer omitted only the doing of a "useless" act.

poration under 26 U.S.C.A. § 1361. The regulation governing the election required the taxpayer to file a statement showing that the business met the qualifications of § 1361(b), an agreement to inform the Commissioner if and when the contingencies specified in § 1361(f) occurred, and corporation tax returns with a statement that the "corporation complied with § 1361." The taxpayer filed the statement and the tax returns, but it failed in the statement to set forth the facts showing that it qualified under § 1361(b) and it failed to make the agreement. Notwithstanding these omissions, the Court permitted the taxpayer to be treated as a corporation, deeming the unfulfilled requirements as "directory" and those which the taxpayer met as "mandatory." But, the Court found as a fact, and this is the distinction between that case and the case at bar (p. 332), " * * * there has been no satisfactory showing in this case that the filing of the statement referred to by the regulation would materially contribute to 'the proper, orderly and prompt conduct' of respondent's functions." In the case at bar the essential question was the amount of the adjustment claimed by Taxpayer under a statute designed to give certain taxpayers an advantageous tax adjustment. The essential information to make the adjustment, even aside from the public policy considerations of requiring self-assessment, was lacking.

Reaver v. Commissioner, 42 T.C. 72 (1964), also cited by Taxpayer, is no more compelling. In that case the taxpayers reported the proceeds of a real estate sale as ordinary income in their 1958 return. Subsequently, they filed an amended return, treating the proceeds as a capital gain and electing the installment method of accounting. The Court held that the taxpayers had made a valid election under 26 U.S.C.A. § 453, but it did so upon the specific finding that the initial failure to treat the proceeds of sale as a capital asset was not (p. 77) " * * * due to negligence or intentional disregard of rules and regulations." Moreover, there was nothing in the applicable regulation which prohibited the making of the elec-

tion in an amended return and *all* the information required by the regulation was supplied in the amended return. By contrast, the regulation in the case at bar specifically requires the election to be made by the doing of two acts, viz., the filing of a statement before September 1, 1960, and the filing of amended returns for the "year of change" and subsequent years before November 30, 1960. As has been shown in the discussion above, there is no basis on which to say that Taxpayer failed to file the amended returns without negligence or intentional disregard of the regulation.

The Court concludes: (a) Taxpayer was not in compliance with a valid regulation, and (b) Taxpayer's non-compliance with the regulation was sufficiently substantial to deny Taxpayer its benefits. It follows that Taxpayer has rendered itself ineligible for the benefits of the Act and is not entitled to a refund.

The Clerk is directed to enter judgment for defendant, with costs.