**COLONY MOTORS, INCORPORATED,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. No. 10361.**

United States District Court
D. Connecticut.

Dec. 29, 1967.

**236**

Newton D. Brenner, of Walsh, Brenner, Susman & Duffy, New Haven, Conn., for plaintiff.

Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., and Burton G. Lipsky, Attys., Dept. of Justice, Washington, D. C., and Jon O. Newman, U. S. Atty., Hartford, Conn., for defendant.

TIMBERS, Chief Judge.

### QUESTION PRESENTED

Plaintiff, Colony Motors, Incorporated (taxpayer), sues, pursuant to 28 U.S.C. § 1346(a) (1), for a refund of income taxes in amount of $1,467.04, plus interest, for the years 1956, 1957, 1958 and 1959, on the basis of a recomputation of income for 1959 and a resulting loss carryback claimed pursuant to the provisions of the Dealer Reserve Income Adjustment Act of 1960 (the Act).[1]

Defendant claims that taxpayer is not entitled to the benefits of the Act for failure to meet the election requirements thereof and also claims that, even were the Act to apply, taxpayer's method of recomputation is incorrect. Defendant therefore claims that under no circumstances is taxpayer entitled to a refund.

The facts having been stipulated, the case has been submitted to the Court for a decision on the basis of the pleadings, exhibits, briefs and other papers on file.

The Court holds that defendant is entitled to judgment, together with its costs.

### FACTS

Taxpayer, a Connecticut corporation, is a retail automobile sales dealer in Wallingford, Connecticut. For a number of years taxpayer arranged financing for its customers with several area finance companies to facilitate sales. These companies turned over to taxpayer that portion of the purchase price of an automobile which the customer wished to finance and accepted the purchaser's promissory note in that amount plus a financing charge. The promissory notes were with recourse to taxpayer. These companies agreed to pay taxpayer a portion of the service charge in order to encourage taxpayer to place such financing business with them. Although the finance companies would immediately credit these financing charges to taxpayer on their books, they would not necessarily pay out these funds. Rather, the companies would hold the sums as a reserve against defaults on the notes placed with them by taxpayer. Normally taxpayer could only draw out that part of the reserve, if any, which exceeded 3% of the outstanding balance on all the notes for which taxpayer was responsible.

For the years prior to 1959 taxpayer did not report as income the amount of the finance company reserves which were subject to the 3% limitation although taxpayer used the accrual basis of accounting in preparing its income tax re-

1. Pub.L.No. 86–459, 74 Stat. 124, 26 U.S.C. § 481 note (1964).

turns; only amounts in excess of 3% were reported.

This practice by an accrual basis taxpayer of reporting such reserves as income only when payable instead of when credited was not unique with the instant taxpayer. Prior to 1959 it had become the subject of constant litigation. Numerous taxpayers relied on favorable decisions in the Third, Fourth, Fifth, Eighth and Ninth Circuits,[2] while the government found support for its opposing position in the Sixth and Seventh Circuits.[3] In 1959 the Supreme Court, in Commissioner v. Hansen, 360 U.S. 446 (1959), resolved this conflict in favor of the government. The *Hansen* decision, holding as it did that amounts in dealer reserve accounts are income to accrual basis taxpayers in the year in which the amounts are first credited to the dealer's account, presented numerous taxpayers with the prospect of paying in a single year substantial taxes now due for prior

years.[4] To alleviate this burden, Congress passed the Dealer Reserve Income Adjustment Act of 1960.[5]

### DEALER RESERVE INCOME ADJUSTMENT ACT OF 1960

The Act makes available two alternatives to taxpayers meeting its requirements. If an eligible taxpayer filed a proper election before September 1, 1960, the change to the proper accounting method in accordance with the *Hansen* decision would be treated as an involuntary change of accounting pursuant to Section 481 of the Internal Revenue Code of 1954.[6] An involuntary change under Section 481 has the advantage of excluding from income in the year of the change any adjustments otherwise required in respect of taxable years prior to the 1954 Code. It is this alternative which taxpayer claims to have properly elected and upon which taxpayer rests its claim to a refund.[7]

\*　　\*　　\*　　\*　　\*

(2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year, as accruable for a subsequent taxable year, and

(3) before September 1, 1960, makes an election under section 3(a) or 4(a) of this Act.

SEC. 3. ELECTION TO HAVE SECTION 481 APPLY.

(a) *General Rule.*—If—

(1) for the year of the change (determined under subsection (b)), the treatment of dealer reserve income by any person to whom this Act applies is changed to a method proper under the *accrual method of accounting* (whether or not such person initiated the change),

(2) such person makes an election under this subsection, and

(3) such person does not make the election provided by section 4(a),

then, for purposes of section 481 of the Internal Revenue Code of 1954, the change described in paragraph (1) shall be treated as a change in method of accounting not initiated by the taxpayer."

2. Keasbey & Mattison Co. v. United States, 141 F.2d 163 (3 Cir. 1944); Johnson v. Commissioner, 233 F.2d 952 (4 Cir. 1956); Texas Trailercoach v. Commissioner, 251 F.2d 395 (5 Cir. 1958); Glover v. Commissioner, 253 F.2d 735 (8 Cir. 1958); Hansen v. Commissioner, 258 F. 2d 585 (9 Cir. 1958).

3. Schaeffer v. Commissioner, 258 F.2d 861 (6 Cir. 1958); Baird v. Commissioner, 256 F.2d 918 (7 Cir. 1958).

4. The dealer reserves involved in *Hansen* were derived from the purchase price portion of the obligations rather than from the finance charge portion as here. But the import of the decision clearly reaches the instant situation. See Bolling v. Commissioner, 357 F.2d 3, 6–7 (8 Cir. 1966); Noble Motor Co. v. United States, 231 F.Supp. 702 (D.Md.1964). And Congress in Section 5(a) (1) of the Act, supra note 1, defined dealer reserve income to include amounts credited from either source.

5. Supra note 1.

6. Int.Rev.Code of 1954, § 481, 26 U.S.C. § 481 (1964).
Sections 2 and 3 of the Act provide in relevant parts as follows:
"SEC. 2. PERSONS TO WHOM THIS ACT APPLIES.
This Act shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959—

7. The second alternative, provided in Section 4 of the Act, did not permit the taxpayer to exclude otherwise required pre-1954 items but instead allowed payment of the total increase in taxes in installments

The requirement of making an election before September 1, 1960 was not otherwise defined by the Act. Instead the Act specifically called upon the Secretary of the Treasury to prescribe by regulation the manner in which elections were to be made.[8] In accordance with this provision the Secretary issued Treas.Reg. § 1.9002–8 (1960). Section 1.9002–8(b) of the Regulation[9] provided that a taxpayer desiring to elect the alternative in issue had to file with the district director, before September 1, 1960, a statement which included a clear indication that an election was being made of that alternative, information sufficient to establish eligibility, and the year of change. The Regulation also provided that an amended income tax return reflecting the change in tax attributable to the election, together with schedules showing how the tax was recomputed, had to be filed, preferably at the time of the filing of the statement, "but in no event later than November 30, 1960, unless an extension of time was granted under Section 6081 of the Code." Taxpayer filed the necessary statement by letter on August 30, 1960. The amended return, however, was not filed until January 12, 1961, forty-two days late. Furthermore, the taxpayer did not submit the schedules required by the Regulation. Taxpayer does not claim that an extension of time for such filings was ever sought or granted.

In its amended return for 1959, taxpayer reported dealer reserve income of minus $9,552.01 and a net operating loss over a maximum ten year period. Taxpayer does not claim to have elected this alternative and it is, therefore, not involved here.

8. Section 5(f) of the Act, supra note 1, is as follows:

"(f) Regulations.—The Secretary of the Treasury or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this Act, including regulations relating to—

(1) the application of the provisions of this Act in the case of partnerships, and

(2) the manner in which the elections provided by this Act are to be made."

9. Treas.Reg. § 1.9002–8(b) is as follows:

"(b) *Time and manner of making elections*—(1) *In general.* Any election made under the Act shall be made by the taxpayers described in paragraph (a) of this section before September 1, 1960, by filing a statement with the district director with whom such taxpayer's income tax return for the taxable year in which the election is made is required to be filed. A copy of the statement of election shall be attached to and filed with such taxpayer's income tax return for such taxable year.

(2) *Election to have section 481 apply.* An election under section 3 of the Act shall be made in the form of a statement which shall include the following:

(i) A clear indication that an election is being made under section 3 of the Act;

(ii) Information sufficient to establish eligibility to make the election; and

(iii) The year of change as defined in section 3(b) of the Act.

An amended income tax return reflecting the increase or decrease in tax attributable to the election shall be filed for the year of change together with schedules showing how the tax was recomputed under section 481 of the Code. If income tax returns have been filed for any taxable years subsequent to the year of change, amended returns reflecting the proper treatment of dealer reserve income for such years shall also be filed. In the case of partnerships and electing small business corporations under subchapter S, chapter 1 of the Code, amended returns shall be filed by the partnership or electing small business corporation, as well as by the partners or shareholders, as the case may be. Any amended return shall be filed with the office of the district director with whom the taxpayer files his income tax return for the taxable year in which the election is made and, if practicable, on the same date the statement of election is filed, but amended returns shall be filed in no event later than November 30, 1960, unless an extension of time is granted under section 6081 of the Code. Whenever the amended returns do not accompany the statement of election, a copy of the statement shall be submitted with the amended returns."

of $21,622.61. This net operating loss is in contrast to taxpayer's original 1959 return which reflected taxable income of $2,119.21. On this basis taxpayer seeks a refund of taxes paid in 1959 and, through carryback of the loss, refund of taxes paid in 1956, 1957 and 1958.

## TAXPAYER'S FAILURE TO MAKE PROPER ELECTION UNDER THE ACT

Defendant's first contention in opposition to taxpayer's claim is that taxpayer failed to make a proper election under the Act and therefore is not entitled to its benefits. This contention is based solely on taxpayer's failure to file an amended return and schedules by November 30, 1960, as required by Treas. Reg. § 1.9002–8(b). Defendant concedes that in all other respects taxpayer has met the requirements for a valid election.

Taxpayer does not deny that the Regulation calls for the filing of an amended return and schedules. Rather, taxpayer contends that in the application of the Regulation a distinction should be drawn between the required filing of the statement of intention by September 1, 1960 and the required filing of an amended return by November 30, 1960.[10] Only the former, taxpayer argues, should determine the validity of a claimed election.

Treas.Reg. § 1.9002–8(b) (2), however, indicates the intent of the Secretary to make the filing of an amended return and schedules by November 30, 1960 an integral part of the requirements for a valid election.[11] Section 1.9002–8 (c), providing that an election is irrevocable by the taxpayer after September 1, 1960, does not indicate a contrary intention if read, as it must be, in light of Section 1.9002–8(b) (2). An election prior to September 1, 1960, when actually accompanied by an amended return and

schedules, as preferred by the Regulation, was complete and irrevocable as of September 1, 1960. But the Regulation permitted a delay in the filing of the amended return and schedules until November 30, 1960. Thus, if a taxpayer filed his election prior to September 1, 1960, but only submitted an amended return and schedules prior to November 30, 1960, the Regulation still recognized a valid election as of September 1. Here, taxpayer filed an amended return subsequent to the November 30th date and never filed the required schedules. The Regulation does not indicate an intention that under such circumstances there is a valid election as of September 1, 1960, the date required by the Act.

■■ Regulations, if reasonable and consistent with law, are binding and should be given effect by the courts. Maryland Casualty Co. v. United States, 251 U.S. 342, 349 (1920). See also International Ry. Co. v. Davidson, 257 U.S. 506, 514 (1922); Manhattan Co. v. Commissioner, 297 U.S. 129, 134 (1936). Particularly strict compliance is usually demanded where a taxpayer seeks to take advantage of an election provision. See, e. g., R. H. Macy & Co. v. United States, 255 F.2d 884 (2 Cir. 1958); Kaufmann & Baer Co. v. United States, 137 F.Supp. 725 (Ct.Cl.1956).

In Noble Motor Co. v. United States, supra note 4, the court upheld the very regulation here in question against a direct attack on its validity and refused to find an effective election where the taxpayer had not filed an amended return. In the instant case, taxpayer does not directly question the Regulation's validity but argues instead that noncompliance should not invalidate an otherwise proper election.

■ The Secretary of the Treasury issued the Regulation pursuant to the

---

10. Taxpayer in its briefs makes no reference to the Regulation's requirement that supporting schedules be filed along with the amended return, nor does it mention its failure to file these schedules. The Court, of course, must consider this as-

pect of taxpayer's noncompliance along with taxpayer's late filing of an amended return.

11. For text of Treas.Reg. § 1.9002–8(b) (2), see supra note 9.

mandate of the Act itself.[12] Furthermore, the Secretary's intention to require the filing of an amended return and supporting schedules as a prerequisite to a valid election is clearly reasonable. The Act provided special treatment for an apparently numerous group of taxpayers. But Congress strictly limited the period of availability of this relief: the Act was passed on May 31, 1960 and the right to elect expired on September 1, 1960. Thus, it was expected that within a short period of time many taxpayers would indicate elections under the Act and that each election would require a recomputation of taxes. If the Internal Revenue Service had to make all these recomputations itself, a process involving the location and use of tax returns for prior years, the expense in time and effort would have been great. In fact, the electing taxpayers would probably have suffered through a resulting delay in the processing of adjustments. Good sense dictated requiring each electing taxpayer to make his own recomputations and to submit them to the Internal Revenue Service in the form of an amended return and supporting schedules. The Secretary of the Treasury could have absolutely required submission of this material at the time of filing of the statement of intention prior to September 1, 1960. Instead, he allowed taxpayers an additional three months to make the necessary calculations. By doing so he virtually eliminated any possible hardship involved in the requirement. Such consideration for electing taxpayers provides additional reason for requiring strict compliance with the Regulation, rather than indicating, as taxpayer implies, that the Regulation is "directory" rather than "mandatory".

■ Taxpayer cites Sperapani v. Commissioner, 42 T.C. 308 (1964), in support of its argument that the Regulation is "directory" rather than "mandatory" and, therefore, noncompliance should not invalidate an otherwise proper election. Assuming that under certain circumstances there may be reason to find that a valid regulation is merely "directory" and not "mandatory", the circumstances are not present here.[13] The *Sperapani* case concerned an election under 26 U.S.C. § 1361 to have a sole proprietorship taxed as a corporation. The Regulation governing the manner of election required the filing of a statement showing that the business possessed the qualifications enumerated in Section 1361(b), an agreement to notify the Commissioner if certain contingencies took place, and a tax return with a statement that the corporation complied with Section 1361. The taxpayer failed to make the agreement and failed to set forth in its statement the facts showing that it qualified for Section 1361 treatment but otherwise complied with the Regulation. The Tax Court held there was a valid election. But, as aptly recognized by the court in Noble Motor Co. v. United States, supra note 4, at 709–10, the Tax Court in *Sperapani* specifically stated (p. 332) that it was not able to find "that the filing of the statement referred to by the regulation would materially contribute to 'the proper, orderly and prompt conduct' of respondent's functions." In the instant action, adherence to the requirements of the Regulation would have constituted a material contribution and,

12. See supra note 8. The Secretary also has general authority pursuant to 26 U.S.C. § 6011 to issue regulations requiring taxpayers to file returns or statements. In addition, 26 U.S.C. § 7805 enables the Secretary to "prescribe all needful rules and regulations * * * including all rules and regulations as may be necessary by reason of any alteration of law in relation to internal revenue."

13. But see the dissenting opinion of Judge Train in Sperapani v. Commissioner, 42 T.C. 308, 337 (1964), in which he argues that classifying a valid regulation as "directory" rather than "mandatory" is an improper basis for sanctioning noncompliance. He contends that in making such a classification the court is simply concluding "that the regulatory requirements are not really important to the administration of the section, effectively substituting the judgment of the court for that of the Secretary."

therefore, noncompliance should not be condoned by classifying the Regulation as "directory" rather than "mandatory".

Nor is United States v. G. W. Van Keppel, 321 F.2d 717 (10 Cir. 1963), authority in support of taxpayer's position. Not only was no election there involved, but the requirement which was not met involved the timely filing of an agreement. The court was able to find that the taxpayer's noncompliance with the requirement resulted in no inconvenience to the Commissioner of Internal Revenue. Id. at 720. No such finding is possible here.

■ Taxpayer in the instant case had determined by August 30, 1960 to elect to have the provisions of the Act apply. It then had three months in which to file an amended return and supporting schedules. The amended return was filed more than a month after this period and the supporting schedules were never filed. Under these circumstances it is impossible to find substantial compliance with the valid regulations governing election under the Act. Taxpayer therefore is not entitled to invoke the benefits of the Act and taxpayer's suit for refunds claimed pursuant to its provisions necessarily must fail.

## TAXPAYER'S ADJUSTMENT TO TAXABLE INCOME FOR 1959 NOT AUTHORIZED BY THE ACT

In view of the foregoing, it is unnecessary to decide whether taxpayer has properly computed the adjustment to taxable income for 1959 upon which is based its refund claim. Assuming, however, that taxpayer had made a valid election and was entitled to the benefits of the Act, the Court would sustain defendant's second contention that taxpayer's calculations are not authorized by the Act and that, in fact, no refund is due.

As already stated, under the alternative of the Act which taxpayer claims to have elected, a taxpayer is entitled to have the contemplated change in accounting treated as an involuntary change pursuant to Section 481 of the Internal Revenue Code of 1954. Section 481 is clear in providing that in computing the adjustment in the year of an involuntary change, the adjustment shall not include items for pre-1954 Code years.[14] This, in simplest terms, means that if there is $10,000 to be accounted for in the year of change, $4,000 of which is attributable to years prior to 1954, only $6,000 will actually be taken into income and taxed.[15]

Taxpayer in its closing pre-1954 Code year had a balance of $34,260.40 in its dealer reserve accounts, while it had only $9,578.95 in these accounts at the beginning of 1959, the year of change. Taxpayer claims that Section 481 permits the actual subtraction of the former figure from the latter figure so as to give rise to an adjustment of minus $24,681.-45. By then using this minus figure to offset dealer reserve income of $15,129.44 for the year 1959,[16] taxpayer is able to

14. Int.Rev.Code of 1954, § 481, 26 U.S.C. § 481 (1964), provides in relevant part as follows:

"(a) *General Rule.*—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the 'year of the change')—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of

any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

15. See Treas.Reg. § 1.481–3.

16. Taxpayer in its original tax return for 1959 showed dealer reserve income attributable to that year of $14,189.81. Subsequently defendant assessed a deficiency in income tax of $281.89 based on the determination that the correct dealer reserve income was $15,129.44, or an increase of $939.63. Taxpayer used the larger figure in preparing its amended return and does not appear to dispute its correctness here.

show, in its 1959 amended return, dealer reserve income of minus $9,552.01 instead of plus $15,129.44, and a net operating loss of $21,622.61 instead of a net operating profit of $2,119.21. As can be seen, taxpayer's refund claim ultimately rests upon the adjustment of the minus figure of $24,681.45, and it is upon the validity of the computation by which taxpayer obtained this figure that defendant focuses its attack.

Defendant contends that in applying Section 481 the only purpose for subtracting the closing pre-1954 dealer reserve balance from the opening 1959 balance is to insure that no part of that opening balance is attributable to pre-1954 Code years. If, as here, the pre-1954 balance is larger than the 1959 opening balance, it means that the entire 1959 opening balance is attributable to pre-1954 Code years. Thus, despite the change in accounting necessitated by Commissioner v. Hansen, supra, and contemplated by the Act, defendant admits that, were Section 481 to apply, taxpayer would not owe any additional taxes for prior years. What defendant objects to is taxpayer's use of the larger pre-1954 closing balance to reduce the opening 1959 balance below zero and the use of the resulting minus balance as a basis for seeking, in effect and in actuality, a refund of taxes paid in prior years.

Defendant's objection is well founded. The $24,681.45 difference between the pre-1954 closing balance and the opening 1959 balance represents dealer reserves which taxpayer, in the years between 1954 and 1959, took into income and upon which it paid taxes in the ordinary course under its pre-Hansen accounting method. By its computation taxpayer, in effect, is claiming not only that it is

entitled to disregard for tax purposes $9,578.95, that is, that portion of the pre-1954 closing balance of $34,260.40 not taken into income prior to 1959—this much defendant would concede—but also that it is entitled to a refund of taxes paid in prior years on the other $24,681.-45.

■ The language of Section 481 does not support taxpayer's contention.[17] Treating the $9,578.95 opening balance for 1959 as income is the only adjustment "necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted." But since, as has been seen, this is an "adjustment in respect of" taxable years prior to 1954, it may "not be taken into account." Thus, no adjustment should be made, and there should be no increase in taxable income. Taxpayer's method of computation, on the other hand, in utilizing the pre-1954 closing balance to obtain a minus figure, actually is taking into account an "adjustment in respect of" taxable years prior to 1954, and therefore is directly contrary to the statutory language.[18]

Nor is taxpayer's method of computation in keeping with the stated purpose of the Act in providing relief to taxpayers in "paying the tax due on [dealer reserve] income *which has not previously been reported.*" (Emphasis added) S. Rep.No.1045, 86th Cong., 2d Sess. (1960). One form of relief settled upon was to excuse from taxation that portion of dealer reserves attributable to years prior to 1954 but not reported as income prior to the year of change (usually, as here, 1959). Thus, Congress intended to ease the burden of paying in one year substantial taxes on possibly large sums accrued over a number of prior years. No appropriate purpose would be served

17. See supra note 14.

18. None of the Regulations or legislative history cited by taxpayer supports its position. Taxpayer's quote from S.Rep. No. 1983, 85th Cong., 2d Sess. (1958), on Section 481, to the effect that "[y]our Committee does not expect that a taxpayer will be denied the right to make any such change merely on the grounds that the change will result in a negative

adjustment," is taken out of context. Actually the statement was made in reference to voluntary rather than involuntary changes pursuant to Section 481. The government, however, correctly points out that negative adjustments may be proper and, in fact, required in certain situations to prevent duplications or omissions of taxable items. This is not one of those situations.

by permitting a taxpayer to claim a refund on taxes already paid on dealer reserve income in prior years. Certainly there is no indication in the Act that Congress intended such a result.

Accordingly, even if the provisions of the Act were applicable to taxpayer, the Act would not justify taxpayer's refund claim.

The foregoing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.

ORDER

The Clerk is directed to enter judgment in favor of defendant, with costs.