Troy R. DOUTHIT and Mildred P. Douthit, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Cecil S. CARROLL and Treba Carroll, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. Civ. 68-25, Civ. 68-26.

United States District Court
W. D. Tennessee, W. D.

April 24, 1969.

Hubert McBride, of Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, Tenn., for plaintiffs.

Thomas L. Robinson, U. S. Atty., Memphis, Tenn., Charles B. Pekor, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

ROBERT M. McRAE, Jr., District Judge.

This suit is one for a refund of income taxes paid by Troy and Mildred Douthit and Cecil and Treba Carroll for the calendar year 1961. The following facts are the basis of the action.

Plaintiffs are partners in the Douthit-Carroll-Sanchez Company, an automobile dealership (hereinafter referred to as the partnership). The partnership generally maintained its books on the accrual method of accounting for a fiscal year beginning February 1 and ending January 31 of the following year. One item of income, however, was accounted for on a cash rather than accrual basis. This item was labeled "finance income" on the partnership books, but since it is referred to as "dealer reserve income" in the applicable cases, statutes and regulations, it will be referred to by that title hereinafter.

The partnership sold many of its cars on a deferred payment basis. The partnership sold or discounted promissory notes received from its customers to various finance companies on either a full or limited recourse basis. The finance companies would withhold from the sums payable to the partnership an amount representing security against default on the note by the customer. As the notes were repaid, the finance companies would release to the partnership the amounts withheld as security.

The sums withheld from those notes discounted on a full recourse basis have consistently been reported by the partnership on the accrual basis, that is, this sum was reported as income when the car giving rise to the note was sold. This amount was not included in the dealer reserve account and is not connected with the alleged overpayment of taxes in this case.

The dealer reserve account reflected the amount withheld from those notes discounted on a limited recourse basis. This amount was accounted for on the cash basis. Thus, the money in the dealer reserve account was not reported by the partnership as income until the year it was paid to the partnership by the finance companies.

On June 22, 1959, the Supreme Court decided the case of Hansen v. Commissioner of Internal Revenue, 360 U.S. 446, 79 S.Ct. 1270, 3 L.Ed.2d 1360 (1959). Resolving a conflict among the Circuits, the Court held that a dealer who generally maintained his books on the accrual system of accounting must report dealer reserve income on the accrual rather than the cash basis. The result of this decision was to place dealers, like the plaintiffs, in the position of having deficiencies assessed on their income tax returns for the years in which such dealer reserves were accrued but not reported as income.

In response to *Hansen,* Congress enacted the Dealer Reserve Adjustment Act of 1960, PL 86–459, on May 13, 1960, 74 Stat. 124 (hereinafter referred to as the Dealer Reserve Act). This Act authorized two alternatives for taxpayers who were generally on the accrual basis but who had reported dealer reserve income on the cash basis.

The first alternative provided that a change in accounting for dealer reserve income from the cash to the accrual method should be treated as a required change in accounting under Section 481 of the Internal Revenue Code of 1954. If this election were made, Section 481 would require that all dealer reserve income, which had accrued during years to which the 1954 Revenue Code applied, but which had not been reported as income, be reported as income (subject to certain throwback provisions) in the year that the taxpayer changed from the cash to the accrual basis. Thus, the taxpayer's income would be increased in the

year of the change by the amount outstanding in the dealer reserve account at the beginning of the year (assuming none of this amount had accrued prior to the enactment of the 1954 Code). This figure would represent the amount of dealer reserve still being withheld by the finance companies. Since this first alternative merely provided that the change should be treated in accordance with Section 481, the result is the same as it would be if the Dealer Reserve Act had not been passed.

The second alternative allowed the taxpayer not to have the change from cash accrual treated as a change in accounting to which Section 481 would apply. "If the taxpayer decides to follow the second alternative he must recompute his tax in each of the prior years which was open on June 21, 1959, determining what his tax should have been in each of these years as distinct from the manner in which he reported it because of his erroneous method for reporting dealer reserve income." Dealer Reserve Act, Senate Report No. 1045, 2 U.S.Code Cong. & Admin.News, pp. 1974, 1978 (1960).

On August 23, 1960, the partnership filed an election under the second alternative, Section 4(a) of the Dealer Reserve Act. In its letter of election the partnership stated that the election would apply to the partnership returns for the fiscal years ending January 31, 1957, January 31, 1958 and January 31, 1959, because these were all of the partnership's taxable years that were open on June 21, 1959. On October 19, 1960, the Internal Revenue Service advised the partnership that the election had been received, but that the amended returns had to be filed by November 30, 1960, for the election to be valid.[1]

On November 15, 1960, the partnership filed amended returns reflecting dealer reserve income on the accrual method of accounting for its fiscal years ending January 31, 1957, through January 31, 1960. The method which the partnership used to adjust its income for the amended returns was to report an increase or decrease based upon offsetting the total items accrued for each year against the cash received from the finance company in each of the years, regardless of when the account, which was the basis of the finance company payment had been set up on the partnership books. None of the amended returns transferred the entire unreported balance of the dealer reserve account from the preceding years into the current year. Increased or (decreased) income was shown on these returns as follows:

| Year Ending | Amount |
| --- | --- |
| January 31 1957 | ($36,774.13) |
| January 31, 1958 | ( 17,723.45) |
| January 31, 1959 | ( 31,733.73) |
| January 31, 1960 | 14,895.89 |

Plaintiffs filed amended individual returns on November 22, 1960, for their individual calendar years 1957, 1958, and 1959, reducing their taxable income by their proportionate share of the amended partnership income. Plaintiffs' original 1960 returns were not due until April 15, 1961, therefore, plaintiffs' share of the partnership's amended income for the year ending January 31, 1960, was reflected on their original 1960 returns.

On August 1, 1961, the Government notified plaintiffs of the disallowance of the refunds sought for the years 1957, 1958 and 1959. The following explanation was given in an audit report sent to the plaintiffs:

"The partnership of Douthit-Carroll-Sanchez Co. filed amended returns for the partnership fiscal years 1–31–57, '58, '59, '60, based upon the Dealer's Reserve Act of 1960. The partnership elected to have Sec. 481 of the Act not apply. This proved to be an improper election, which was the cause of the

---

1. Although the election under the terms of the Act had to be filed by September 30, 1960, the regulations allowed until November 30, 1960, for the amended returns to be filed. 26 CFR § 1.9002–8(b) (3).

disallowance of the amounts claimed for refund."

These claims are not the same claims for refund involved in this suit.

In September 1964, the Government adjusted plaintiffs' original 1960 income tax returns, which had been filed on a basis consistent with the amended partnership returns, by scheduling a refund of taxes for that year.

The effect of the Government's disallowance of the plaintiffs' claims for 1957, 1958 and 1959, and the refund for 1960 was to tax the plaintiffs on the partnership's dealer reserve income for those years under the cash method of accounting in spite of the ruling in *Hansen*.

The partnership continued its method of reporting dealer reserve income on the accrual basis for the partnership fiscal year ending January 31, 1961. The Internal Revenue Service examined the partnership returns for the fiscal years ending January 31, 1960 and January 31, 1961, and the individual returns for plaintiffs' calendar years 1960 and 1961. The Internal Revenue Service's report dated September 16, 1964, contained the following statement:

"1. In the year ended January 31, 1961, the partnership changed its method of accounting for dealer reserve income. It is determined that an adjustment in the amount of $97,-571.77, representing the amount of unreported dealer reserves due to the partnership on February 1, 1960, is necessary in the year January 31, 1961, in order to prevent such amount from being omitted from income. Accordingly the partnership's income is increased in the amount of $97,571.77. Section 481(a), Internal Revenue Code of 1954."

These facts present two issues for determination in this case. First, was the election of the partnership under Section 4(a) of the Dealer Reserve Act a valid one? Second, if it was not, is the Government correct in its assertion that the partnership changed its accounting method in fiscal 1961 and that under Section 481(a) of the Internal Revenue Code of 1954 the income of the partnership for that year should be increased by $97,571.77?

■ There must be strict compliance with the Dealer Reserve Act and regulations adopted in furtherance thereof, in order for a taxpayer to receive the benefit of an election. Colony Motors, Inc. v. United States, 280 F.Supp. 235 (D. Conn.1967). Therefore, the Government is correct in its assertion that plaintiffs did not comply with Section 4(a) of the Dealer Reserve Act and 26 CFR § 1.-9002–8(b) (3) in making their election not to have the change in accounting treated under Section 481, IRC 1954. The regulation states that, "Amended income tax returns reflecting the increase or decrease in tax attributed to the election shall be filed for the taxable years to which the election applies." The taxable years to which the election applies are set forth in Section 4(a) of the Act:

"Any election under this subsection shall apply to all taxable years ending on or before June 22, 1959, * * * for which the assessment of any deficiency, or for which refund or credit of any overpayment, whichever is applicable, was not, on June 22, 1959, prevented by the operation of any law or rule of law."

Under Section 6501 assessment must be imposed within three years after the return was filed (or if the return was filed within three years after the date it was due). Section 6511 provides that a claim for refund must be filed within three years after the return was filed or two years after the tax was paid, whichever is later.

On June 22, 1959, more than three years had elapsed since the date the partnership return for the fiscal year ending January 31, 1956, was due (May 15, 1956), but the period had not run for the calendar year 1956 of the individual partners (April 15, 1957). Income from the partnership's 1956 fiscal

year would be included as income to the partners in their 1956 calendar year. 26 U.S.C. § 706.

■ Plaintiffs, in making their election, did not file amended returns for either the partnership fiscal year 1956 or the partners' calendar year 1956. They reasoned that since under the regulations (26 CFR § 1.9002–8(a) (2)) the partnership, not the partners, was required to make the election under Section 34(a) of the Dealer Reserve Act, that the taxable years open on June 22, 1959, should be figured with reference to the partnership years that were open. It should also be mentioned, although there is no intention to impute ulterior motives to plaintiffs, that it appears that the partnership's fiscal year 1956 was the first year that notes were sold to finance companies on a limited recourse basis.[2] The amount of dealer reserve income which accrued during 1956, but was still being withheld by the finance companies at the end of that year was $168,907.19. Thus, had the partnership year 1956 been included in the election, income for the partnership would have been increased by this amount.

■■ The plaintiffs' reasoning cannot stand up in the light of the language of Section 4(a) describing the taxable years to which the election applies. The description is couched in terms of assessment and claim for refund. The partners, not the partnership, are subject to income tax. 26 U.S.C. § 701. Since the partnership is not a taxable entity, it cannot be assessed taxes nor can it file a claim for refund. On June 22, 1959, taxes could still be assessed against the individual plaintiffs and they could still make a claim for refund for their calendar year 1956. The partnership returns were merely information returns required by 26 U.S.C. § 6031. (See, Automobile Club of Michigan v.

Commissioner of Internal Revenue, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957) in which under a completely different fact situation the Supreme Court held that information returns filed by an automobile club did not constitute filing of returns for the purpose of the statute of limitations.) Any change in the information return filed by the partnership for fiscal 1956 necessary to validate the assessment or refund would not be barred by the statute of limitations for assessments and refunds.

■ Since it is undisputed that the partnership did change its method of accounting, and since this Court has held that the partnership did not make a valid election under Section 4(a) of the Dealer Reserve Act, Section 481 is applicable to the year that the partnership changed its method of accounting for dealer reserve income as if the Dealer Reserve Act had not been passed. Section 481 allows the Commissioner in the year that the taxpayer changes his method of accounting to take into account "those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted * * *." The problem in the instant case is to determine in what year the taxpayers were required to change their method of accounting and therefore in what year the "adjustments" should have been made.

The Government, in its proposed conclusions of law, has set forth the following theory concerning the year of change:

> "The Commissioner of Internal Revenue has broad discretion in refusing or granting permission to change the method of accounting used by a taxpayer, and absent the Commissioner's consent an attempted change is not effective. Section 446(e). (Citations omitted).

Colony Motors, Inc. v. United States, 280 F.Supp. 235 (D.Conn.1967) and Ryan v. Comm., 42 T.C. 386 (1964).

---

**2.** The facts of the instant case do not involve any dealer reserve income prior to 1954, therefore, that troublesome problem is not involved in this case. See

"The Government did not accept the Partnership's attempted change of its accounting method for years 1957 through 1960, and therefore, fiscal year 1961 was the first year under which the Partnership's income was computed on a different method. Thus, year 1961 was the year of change as referred to in Section 481(a) (2)."

█ The Supreme Court decided Hansen v. Commissioner, supra, on June 22, 1959, during the partnership fiscal year 1960. This decision required dealers on the accrual system of accounting to report dealer reserve income in the year in which it accrued. Section 446(e) requiring consent of the Commissioner is not applicable to a change in accounting required by law. As the Court stated in Woodward Iron Co. v. United States, 254 F.Supp. 835, 837 (N. D.Ala.,) affirmed 396 F.2d 552 (C.A.5, 1968), "The question of consent does not arise because both the taxpayer and the Commissioner are required to make the change."

The Tax Court has also recognized the soundness of this rule:

"Section 446(e) provides that some changes in the manner of reporting income require the consent of the respondent. But Section 446(e) (and its predecessors in the regulations) is not applicable where the law specifically prescribes or proscribes a method of accounting or computation; the general requirement of consent to change yields before the more specific commands of the law." North Carolina Granite Corporation v. Commissioner, 43 T.C. 149 (1964).

The Government in support of its contention that 1961 was the year of the change in method of accounting relies upon United States v. Catto (1966), 384 U.S. 102, wherein at pages 114 and 115, 86 S.Ct. 1311, 16 L.Ed.2d 398, the Court recognized the discretion given the Commissioner in "shepherding" the accounting methods of taxpayers. This Court is of the opinion that Catto is not controlling herein because the attempted change therein was permissible, not mandatory.

█ By the decision in Hansen the partnership was required to change its method of accounting by reporting dealer reserve income on the accrual basis. By the same token, the Commissioner was required to accept the change and make the appropriate adjustments for the year of the change and any prior years for the partnership and the individual partners. Both the taxpayer and the Government were bound by the mandate of the Supreme Court. The first partnership return due after Hansen was the one for the fiscal year ending January 31, 1960. The partnership was compelled to include in its income that amount of dealer reserve income which had accrued to the partnership during this fiscal year.

█ Although the Government was bound by Hansen to accept or require the partnership's change in accounting for dealer reserve income for the fiscal year ending January 31, 1960, the tax consequences of this change would not result until the partners reported the dealer reserve income accrued to the partnership as individual income on their tax returns for the calendar year 1960. Thus the Government had three years, beginning April 15, 1961, (the date on which the partners' returns for 1960 were due) in which to make any necessary adjustments to the partnership and individual returns under 26 U. S.C. § 481 and to assess any deficiencies to the individual partners.

In 1964 the Government audited the taxpayers' returns for the years 1960 and 1961. On September 16, 1964, after the statute of limitations had run for 1960, the Government undertook to include as income to the partners in 1961 dealer reserve income accrued to the partnership in prior years upon the theory that the partnership changed its method of accounting in the fiscal year ending January 31, 1961. Barred by the statute of limitations from making the

assessment for the correct year, the Government attempted to make it for an incorrect year.

For the reasons set forth above, this Court is of the opinion that the assessments made by the defendant against the plaintiffs for the year 1961 were improper and that the plaintiffs should be refunded the tax sued for.